## TESRA CO. v. HOLLAND FURNACE CO.
### No. 6461.

Circuit Court of Appeals, Sixth Circuit.
Nov. 12, 1934.

A. J. Levin, of Detroit, Mich. (Butzel, Levin & Winston, of Detroit, Mich., and Butterfield, Keeney & Amberg, of Grand Rapids, Mich., on the brief), for appellant.

Stuart Knappen, of Grand Rapids, Mich. (Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., and Charles K. Van Duren, of Holland, Mich., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The appellant is a California corporation, and was engaged in the manufacture and sale of a device consisting of a steam radiator, heating unit and switch operated by means of a thermostat. It spent large sums of money in marketing this product with some success. Appellee, a corporation engaged in the manufacture of hot-air furnaces in Holland, Mich., entered into a written agreement with the appellant on March 15, 1928, for the purchase of the contrivance. The agreement contemplated a formal contract to be executed later between the parties, and required the appellant to assign to the appellee a certain patent, application for which was then pending. Shortly after the execution and delivery of this agreement the appellee paid to the appellant $15,000 under the agreement, $7,500 of which was for advance royalties. Thereafter the appellee, prior to the allowance and assignment of the patent, began to manufacture the device, and completed 125 units. A corporation was formed by the appellee in California to sell the contrivance, but the enterprise was unsuccessful. Later the appellee opened an office in Oakland, Cal., which handled the device. During some eighteen months, in spite of energetic efforts, the appellee was able to sell only some 75 of the units. The manufacture and sale were discontinued in November, 1929.

When the preliminary contract was executed, the finances of the appellant were exhausted. On March 29, 1928, Joseph Wahrhaftig and James C. Bequette (president and secretary-treasurer of the Tesra Company, respectively), in support of a petition to the Commissioner of Patents to advance their application for special examination and consideration of the pending patent application, executed an affidavit in which they stated that the Tesra Company had ceased operations and was on the verge of bankruptcy; that there were over $14,000 of unpaid bills; that less than $7,500 was available to meet the bills. In the petition to advance the patent application, it was stated in substance that the sale of the company had been arranged; that the value of the good will was being severely prejudiced by the fact that the Tesra Company had already suspended operations and was in immediate danger of being thrown into bankruptcy and that in event of failure to sell the Tesra Company, a loss of at least $7,500 would unavoidably be sustained by its creditors in addition to large losses by stockholders. Later Bequette filed an affidavit stating that if the preliminary agreement could be consummated, all outstanding bills could be paid in full and stockholders reimbursed; that the consummation of the contract in its entirety depended upon the in-

dication by the Patent Office of allowable subject-matter; that creditors were being held off from closing out only in the expectation that the agreement would be consummated and that if the application was not favorably acted upon at an early date, it was certain that the creditors would force the corporation into involuntary bankruptcy.

The case was then made special by the Patent Office. Subsequently the original claims were withdrawn by the appellant and eleven new claims were substituted, all referring solely to the switch. While these substituted claims were allowed by the Patent Office on July 16, 1928, no patent was ever issued for the reason that the final fee was not paid by either party.

Assignments of the patent rights were made by the appellant, and after manufacture was discontinued, the appellant brought suit for $42,500, together with interest, claiming this as a balance due upon the sum of $50,000 set forth in the contract, deducting the $7,500 advance royalties which had been paid. The District Court rendered judgment of no cause of action.

The main legal contentions of the appellant are (1) that the appellee was obligated at all events to pay $50,000 under the contract, and (2) that the provision in the contract that the appellee will pay $1 per unit "until there has been paid to said The Tesra Co. the sum of Fifty Thousand ($50,000) Dollars," is a minimum payment provision, under which there was an implied covenant that the appellee would manufacture and sell devices producing royalties to the amount of $50,000, within a reasonable time.

These contentions require a construction of the contract. There is a dispute between the parties as to which instrument constitutes the contract, Exhibit A, or Exhibit D. For the purpose of this decision, we assume, as contended by appellant, that Exhibit D constitutes the contract. This instrument includes an assignment of the patent rights, authorizes the issuance of such letters patent to the appellee, and contains the following paragraph which is the basis of appellant's contention:

"It is, however, understood, and said Holland Furnace Company by the acceptance of this assignment does hereby agree that said Holland Furnace Company will pay and does hereby agree to pay to said The Tesra Co. the sum of One (1) Dollar per unit for each set of Thermo-Electric Heater Controls used by it and made under said patent, until there has been paid to said The Tesra Co. the sum of Fifty Thousand ($50,000) Dollars, plus interest at the rate of Six (6) per cent on the unpaid balances on said sum of Fifty Thousand (50,000) Dollars, until the said sum of Fifty Thousand (50,000) Dollars, together with interest as aforesaid, has been paid; it is further understood that said Holland Furnace Company has advanced to The Tesra Co. the sum of Seventy-five Hundred (7500) Dollars on said royalties, and that one-fourth of the royalties accruing shall be credited against said advance of Seventy-five hundred (7500) Dollars, until Seventy-five Hundred (7500) Dollars shall have been paid, and thereafter all royalties shall be paid to The Tesra Co.; it is further understood and agreed that said royalties are to be paid on the 15th day of January and the 15th day of July of each year for the preceding six full calendar months."

Exhibit A contains the phrase "we are to pay only on actual units disposed of." These words are omitted from Exhibit D. The appellant urges that the omission of this phrase demonstrates that the parties contracted to make the payment of $50,000 an obligation absolute upon the appellee. However, in plain terms the contract binds the appellee not to pay $50,000 at all events, as claimed by appellant, but to pay one dollar per unit for each set used by it and made under the patent, until there has been paid to the appellant the sum of $50,000 with interest. The appellant urges that the agreement to pay one dollar per unit refers to the time of payment, but while this phrase does refer to the time of payment, it also clearly defines the amount of payment agreed upon. The word "until," stressed by appellant as requiring a conclusion that the appellee entered into an absolute obligation to pay $50,000, merely marks the limit of the maximum payment.

The appellant also urges that the word "royalty" in this contract is synonymous with "payment." A royalty is a payment proportionate to the use of a patented device. Western Union Telegraph Co. v. American Bell Telephone Co., 125 F. 342, 348 (C. C. A. 1). The parties must be taken to have contracted with the customary meaning of the word in mind. There is nothing in the contract to indicate that by the use of this word it was agreed that the appellee should pay $50,000 to the appellant, regardless of the commercial success of the device. The parties could have made a provision for minimum royalty, but they did not do so. Hence the omission in Exhibit D of the phrase "we are to pay only

on actual units disposed of," which appears in Exhibit A, is not material. The omitted phrase is tautological only. Under this contract the appellee was obligated to pay $50,000 only if and when 50,000 units should be manufactured and sold.

Upon the second contention, it has already been noted that $50,000 was the maximum and not the minimum payment provided for in the contract. Aside from the holdings construing express minimum payment provisions, appellant urges that where there has been an assignment upon an agreement to pay the assignor sums of money based upon the earnings of property assigned, a covenant should be implied to render the subject-matter of the contract productive, and that this rule of law requires a reversal of the judgment below. The court in Re Waterson, Berlin & Snyder Co., 48 F.(2d) 704, 709 (C. C. A. 2), implied a covenant to work a copyright so far as reasonable under the circumstances. However, a consideration of the whole contract here in issue in light of the facts and circumstances leading up to its execution shows that the parties did not contemplate that the appellee would manufacture or sell any specific number of the units. The financial situation of the appellant rendered it eager to secure the substantial payment made under the preliminary contract. It was contemplated that the appellee would make a good faith effort to manufacture and sell as many of the units as it could with profit. Immediately after the execution of the preliminary contract, the appellee paid $7,500 advance royalty, as much as if it had manufactured and sold 7,500 units. The District Court found, and this finding is supported by substantial evidence, that there was an attempt on the part of the appellee in good faith to manufacture and sell the device. This is all it was obliged to do under the contract, either by its express terms or by implication, and hence it is not liable for breach of the contract.

The appellant also contends that the provision for the payment of interest in the exhibits indicates that the principal sum of $50,000 was to be paid as the purchase price. Since, however, this principal sum was a maximum to be built up out of royalties upon units actually used and made under the patent, the provision for the payment of interest is a provision for interest upon a variable amount that might, but never did, become due under the contract.

The judgment of the District Court is affirmed.