[L. A. No. 18186. In Bank. Apr. 23, 1943.]

EASTMAN OIL WELL SURVEY CORPORATION (a Corporation) et al., Respondents, v. LANE-WELLS COMPANY (a Corporation) Appellant.

Raphael Dechter and B. L. Hoyt for Appellant.

Houser & Houser, Swaffield & Swaffield and Roland G. Swaffield for Respondents.

TRAYNOR, J.—Plaintiff, Eastman Oil Well Survey Corporation, brought this action for a declaration of its obligations under a contract with defendant, Lane-Wells Company. The contract gave plaintiff a license to use patented methods for orienting oil wells, i.e. discovering the angle and the direction in which they have been drilled. In return, plaintiff agreed to pay a royalty representing a percentage of what it charged its clients for orienting wells. After the execution of the contract, plaintiff perfected a new method of orientation, and seeks a declaration that it need pay no royalty on transactions in which it uses its own methods.

Defendant relies on the language of the royalty clause of the contract, providing that, "Licensee Covenants and Agrees to pay to Licensor, . . . the following royalties: For each orienting survey of a well bore, a sum equal to sixteen and two-thirds percent (16⅔%) of the total charge made by licensee for such orienting service, but in no event shall such royalty be less than the sum of Twenty-five Dollars ($25.00) . . . '' Similar language appears in subsequent sentences. A royalty is specified "For orienting any tools," and likewise "For orienting pipe." The next clause provides that "It is expressly Understood and Agreed that the royalties herein provided shall be computed from and paid for all orienting services rendered by Licensee from and including January 1, 1938." This language, taken by itself, might be construed to require plaintiff to pay a royalty on any orienting service, whether or not the patented methods were used. Such broad language, however, is to be read in the light of the subject matter of the contract and the apparent intentions of the parties. (*Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474 [19 P.2d 785]; *Hollander* v. *Wilson Estate Co.*, 214 Cal. 582 [7 P.2d 177].) The term royalty ordinarily envisages a duty to make and a corresponding right to receive payments proportionate to the use of patented methods or machines. (*Tesra* v. *Holland Furnace Co*., 73 F.2d 553; *Western Union Telegraph Co.* v. *American Bell Telephone Co.*, (C.C.A. 1st) 125 F. 342; *Hubenthal* v. *Kennedy*, 76 Iowa 707 [39 N.W. 694]; *Volk* v. *Volk Mfg. Co.*, 101 Conn. 594 [126 A. 847]; and see 37. Words and Phrases (Perm. ed.) 809.) The contract gave plaintiff the right to use methods and devices covered by patents identified in the contract itself as "the subject matter of this

Agreement.'' Presumably the schedule of payments is based on plaintiff's use of the patented methods. (See *National Fireproofing Co.* v. *Imperishable Silo Co.*, 63 Ind. App. 183 [112 N.E. 403]; *Clancy* v. *Troy Belting & Supply Co.*, (C.C.A.2d) 157 F. 554; *Dodge Mfg. Co.* v. *Patten*, (C.C.A.2d) 60 F.2d 676; *Tesra* v. *Holland Furnace Co., supra.*) It would be an extraordinary schedule that would be based also on plaintiff's use of methods that were his own property, and the succeeding clause of the contract leads to the conclusion that no such departure from ordinary practice was intended: Licensee ''Agrees to keep a true and accurate set of books of account showing . . . All transactions in connection with all services rendered under this license . . . And further agrees to render a true statement in writing to the licensor . . . setting forth a true statement of each service rendered hereunder. . . . '' The phrases ''services rendered under this license,'' and ''service rendered hereunder,'' are not the equivalent of ''all orientation services;'' they are limiting phrases that make it unnecessary to account for all services, and indicate that the royalty clause was not intended to apply to transactions in which plaintiff used its own methods.

Defendant itself relies less on the language of the instrument than on the circumstances surrounding the execution of the contract. Defendant had obtained a judgment against plaintiff for infringement of defendant's patents; an accounting had been ordered to determine damages, and plaintiff had commenced an appeal from this judgment. Defendant had several other suits for infringement still pending against plaintiff. There was evidence that plaintiff believed the judgment would be reversed and that the accounting would show that damages were not large; there was also evidence that defendant held the opposite belief. On the basis of defendant's description alone of the conferences, conversations and negotiations preceding the execution of this contract, it would be reasonable to conclude that plaintiff agreed to pay a royalty on all operations to avoid the imposition of a crushing judgment debt, and to obtain methods with which to operate. Plaintiff's evidence, however, indicates that it assigned the patents under which it was then operating to defendant, taking in return a license for the use of those patents and others owned by defendant as a reasonable compromise of a costly lawsuit. There was evidence that the conferences were con-

cerned almost exclusively with those patents and that there was nothing to suggest that plaintiff pay for methods it might itself devise in the future. As a result of these conferences the contract involved in this suit was executed; defendant and plaintiff entered into a stipulation for the entry of a cash judgment in lieu of the accounting; defendant dismissed the other suits against plaintiff; and contracts' were executed by which defendant gave plaintiff a license to use a certain tool, in exchange for a license to use a different tool designed for somewhat similar purposes. These licenses provided for royalties payable on each operation in which the tools were used.

Defendant contends that the finding of the trial court that " . . . said License Agreement . . . is . . . clear and unambiguous . . . " shows that the evidence of the circumstances surrounding the contract was not even considered. This evidence was admitted over objection, after counsel for plaintiff had argued that it should not be used in the interpretation of the contract. When counsel were about to argue its interpretation, the court emphasized its wish to have a full discussion of the negotiations preceding its execution. It is reasonable to conclude that this finding means that the court, having examined the contract in the light of all the evidence, was convinced that it was open to only one interpretation. Defendant, moreover, set forth the surrounding circumstances in detail in its first separate defense, and alleged as part of that defense that it was intended by the parties that plaintiff pay a royalty on all orientation services. The court found that the allegations of this defense, with minor exceptions, were untrue. This finding, clearly against defendant on the effect of the extrinsic evidence, is conclusive, since the evidence of surrounding circumstances was in conflict and could give rise to varying inferences. (*Estate of Platt, ante,* p. 343 [131 P.2d 825] ; *Medico Dental Bldg. Co.* v. *Horton & Converse, ante,* p. 411 [132 P.2d 457].) It is thus of no avail for defendant to assail the finding that the contract was clear and unambiguous.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied May 20, 1943.