[L. A. No. 19351. In Bank. Aug. 31, 1945.]

F. W. STEVENSON, Respondent, v. COUNTY OF SAN DIEGO, Appellant.

Thomas Whelan, District Attorney, Frank T. Dunn, Assistant District Attorney, and Carroll H. Smith, Chief Trial Deputy District Attorney, for Appellant.

George H. Stone, Monroe & McInnis and C. M. Monroe for Respondent.

GIBSON, C. J. — Plaintiff, an architect, was employed by defendant county to prepare preliminary plans and estimates, working plans and specifications and to supervise the construction of a group of buildings for a tuberculosis sanitarium. Upon approval of the preliminary plans and estimates plaintiff was to be paid 1½ per cent of the estimated cost of construction. A second contract with the county employed plaintiff to do similar work in connection with alterations and additions to county hospital buildings. Under this employment plaintiff was to receive an initial payment of 2½ per cent of the cost. Subsequent progress payments provided for in the contracts are not involved here. In the event of abandonment of the projects, plaintiff was to be paid the amount earned up to that time.

Plaintiff prepared preliminary plans and estimates for the work and the county decided to seek federal aid to finance construction. Accordingly, on July 14, 1941, the board of supervisors passed a resolution directing that an application be made to the Federal Works Agency for financial assistance. The resolution, among other things, authorized and directed certain county officers and plaintiff, as architect, to furnish "the necessary data and information" required in the application for federal financial aid, plaintiff's services "in this matter to be without charge to the county." Plaintiff and the others named in the resolution assembled the required data and information from the plans theretofore prepared by him, subject to such changes as were necessary

to comply with government requirements. This data and information were placed on a form of application furnished by the government and copies of the modified preliminary plans were attached. The application and attached exhibits, including plaintiff's preliminary plans and estimates, were approved by the board of supervisors in August, 1941.

The federal government did not approve the entire proposed project but agreed to finance the construction of two new buildings and the remodeling of two buildings, for which it appropriated $620,000 and $60,500, respectively. The new construction was to be done under federal contract and the remodeling work was to be done under contracts let by the county. In February, 1942, the federal government employed plaintiff by contract to act as architect on the new construction work for a fee of $29,760. Later, because of differences between them, the county terminated plaintiff's contracts and he brought this action to recover for services rendered to the county thereunder. The trial court found for plaintiff on all material issues and entered judgment in his favor for $21,539.10, representing the aggregate of four items or amounts which plaintiff alleged he was entitled to recover under his contracts.

The county contends that its resolution of July 14, 1941, which directed plaintiff to furnish the necessary data and information for the application for federal funds and provided that his services in connection therewith were to be without charge, modified the contracts and relieved the county of any obligation to pay for the preliminary plans and estimates theretofore prepared by plaintiff. The county argues that the resolution is clear on its face and as a matter of law forecloses recovery by plaintiff for services performed under the contracts. It is plaintiff's position that the work done pursuant to the resolution was different from and in addition to the services rendered in the preparation of the preliminary plans and estimates, and that the finding of the court to this effect is supported by the evidence.

It is settled that if the interpretation of a written document depends solely upon the language of the instrument itself the trial court's construction is not binding and a reviewing court will determine its meaning as a matter of law. (*Moore* v. *Wood, ante,* pp. 621, 629 [160 P.2d 772].)

On the other hand, if parol evidence is necessary to explain the meaning of an instrument, an appellate court

will follow the trial court's construction if it is supported by the evidence. (*Medico-Dental Bldg. Co.* v. *Horton & Converse*, 21 Cal.2d 411, 430 [132 P.2d 457]; *Eastman Oil etc. Corp.* v. *Lane-Wells Co.*, 21 Cal.2d 872, 875 [136 P.2d 564].)

When the resolution and contracts are read together it cannot be said as a matter of law that the work directed by the resolution was identical with that performed under the contracts. Plaintiff testified that the services rendered under the resolution were not the same as those theretofore performed by him under the contracts and that although he was willing, without charge, to aid the county in preparing the application for federal funds, it was not his intention to thereby waive his right to compensation under the contracts. The evidence supports the conclusion of the trial court "that it was intended and understood by said resolution that the only work expected to be done free of charge by plaintiff was work in addition to that provided for in his said contracts."

Nor do we find merit in the county's contention that the action is for damages for breach of contract and that, if entitled to recover at all, plaintiff is only entitled to his prospective profits and not to the full amount of the earned percentages. As stated above, plaintiff was entitled to progress payments under the contracts. The county was given the right to abandon, conditioned, however, upon payment of the compensation then earned. The approval by the county of the preliminary plans and estimates in August, 1941, therefore fixed plaintiff's right to recover the initial percentage payments under the contracts.

The county makes a further contention with respect to an item of $15,500, included in the judgment, which represents the initial progress payment of $2\frac{1}{2}$ per cent of $620,000 which the federal government allotted as the cost of construction of the two new buildings. It is argued that this item was improperly allowed because it assertedly covers compensation for services for which plaintiff received payment under his contract with the federal government. It is claimed that plaintiff's contract with the federal government contemplated the preparation of preliminary plans and that a portion of the fee therein fixed consequently served as compensation therefor. Upon this premise the county concludes that by entering into the federal contract plaintiff evidenced his intention to abandon any claim he might have under his prior

contract with the county for the preparation of the preliminary plans.

The trial court found that the preliminary plans were prepared pursuant to the second contract between plaintiff and the county; that he was entitled to the specified 2½ per cent fee upon approval by the board of supervisors in August, 1941; and that plaintiff's later contract with the federal government did not include any compensation for such plans.

It is argued by the county that the provision in plaintiff's contract with the government requiring him to furnish certain "preliminary documents" in connection with the working drawings is evidence that he consented to look to the government for payment of services rendered the county in the preparation of "preliminary plans and estimates." It appears, however, that the "preliminary documents" referred to are not the same as the preliminary plans and estimates, which had theretofore been furnished the government in connection with the county's application for funds. There is no evidence that the federal government by undertaking to finance the construction of the project also obligated itself to pay for the preparation of the preliminary plans that accompanied the application for financial aid. The project engineer employed by the Federal Works Agency, who was in charge of the transaction in question, testified that preliminary plans and sketches accompanying an application for federal aid must be furnished by the applicant without cost to the federal government. As stated above, the plans had been previously prepared under plaintiff's contract with the county, which had agreed to pay for them. Later, and upon approval of the county's application for funds, the federal government took over the construction work and in accordance with its established procedure made its own contract for architectural services incident thereto. Although the contract for such services was executed with plaintiff, it need not have been, since the federal government was free to employ any architect it desired. If an architect other than plaintiff had been employed by the federal government, it could not be successfully urged that as a consequence plaintiff lost his right to compensation for the services he had rendered the county, and the fact that the federal government contracted for plaintiff's services in connection with the construction work did not deprive plaintiff of the right to be compen-

sated by the county for. the preparation of the preliminary plans and estimates.

Plaintiff's claim that he is not receiving double compensation is further supported by an analysis of his contracts with the county and the federal government. Following the approval by the federal agency of the county's application for financial aid plaintiff proceeded under his subsequently executed contract with the federal government to prepare working plans and specifications. Under his contract with the county, plaintiff was entitled to receive (1) upon approval of the preliminary plans, the sum of $15,500, being 2½ per cent of $620,000, the estimated cost of construction, (2) upon the completion of the working drawings, an additional 5 per cent, or $31,000. Therefore, if plaintiff had proceeded solely under the county contract he would have received a total of $46,500 from the county for the preparation of preliminary plans and working drawings. Under the federal contract, however, he received for the working drawings a total of $29,760. This figure is a little short of, but approximately offsets, the $31,000 he would have received under his county contract for the preparation of the working drawings.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.