[Civ. No. 3624.   Fourth Dist.   June 6, 1947.]

CALIFORNIA BUILDING COMPANY OF SAN DIEGO (a Corporation), Appellant, v. NATHAN HALLE, Respondent.

Gray, Cary, Ames & Driscoll and John M. Cranston for Appellant.

Phil D. Swing and C. H. Scharnikow for Respondent.

GRIFFIN, J.—Action to declare rights of parties under a written lease. Lots E, F, G and H in Block 16 of Horton's Addition in San Diego comprise a rectangular parcel of property having a frontage of 100 feet on Third Avenue, 100 feet on Fourth Avenue and 200 feet on C Street. The defendant and respondent owns lots G and H, which are located at the northwest corner of C Street and Fourth Avenue and have a frontage of 100 feet on each of said streets. These two lots are, under an assigned 99-year lease, let to the plaintiff and appellant California Building Company of San Diego, a corporation. Plaintiff's and lessee's fee-owned contiguous lots E and F, are located at the northeast corner of Third Avenue and C Streets and have a frontage of 100 feet on each of said streets. The entire parcel is improved with a building in which are located stores, offices and a large theatre. The office portion of the building is eight stories in height. There are 17 stores on the street floor, nine of which are located on C Street, four on Fourth and four on Third Avenue. Seventy-three offices and a beauty parlor are located in the seven upper floors. The theatre, having approximately 2,014 seats, is located on the ground floor of the building. The public entrance to the theatre and the entrance to the office portion of the building are located on Fourth Avenue, that is, upon the property owned in fee by the defendant, and which is leased to the plaintiff under a 99-year lease. The property line separating the lots owned in fee by the plaintiff from those owned in fee by the defendant crosses the theatre auditorium at approximately its center. The theatre has a stage which is approximately 65 feet in width and approximately 30 feet in depth. This area has a clear height of 70 feet, it being approximately six stories from the stage floor to the roof. Some years ago the stage was used for the purpose of presenting vaudeville and other attractions which required the use of a large stage, but during the past ten years the theatre has presented motion picture shows exclusively, and no use has been made of the stage area except that portion of the front thereof occupied by the motion picture screen and the small amount of space required to accommodate the sound system horns. The unused portion of the stage, which has a cubical volume of approximately 125,000 feet, can be put to valuable use by the plaintiff, but no actual use can ever be made of this area unless, in conformity to safety regulations pertaining to the operation of motion picture theatres, there first be erected a fire wall separating it from the part

of the premises actually in use as a motion picture theatre. If the plaintiff is not prohibited by the terms of its lease from remodeling the stage portion and erecting such a fire wall, it proposes to erect such a wall and convert the unused stage area into a motion picture theatre with a seating capacity of 450 persons and exhibiting mainly news reels. This project would require the expenditure of about $50,000, and because of doubt as to the interpretation of certain provisions in the lease, plaintiff advised the defendant of its plans. Defendant claimed and now claims, that the construction of a fire wall and the conversion of the stage space would be a violation of the 99-year lease unless he gives his written consent thereto, which consent he has withheld.

In 1925, the original lessor, Jones, owned lots G and H, and the original lessees, Kass and Ruben, owned lots E and F. The lessees proposed to take a 99-year lease on lessor's lots and build a combination theatre, store and office building on all of them. The lease covers over 27 pages and sets forth the rights and obligations of the several parties. The provisions of the original lease bearing on the present controversy are as follows:

Paragraph 6. ''The lessees agree that they will, on or before June 1, 1926, in good faith, commence the construction of a Class A fireproof theatre building upon said lots G and H, and upon lots E and F, in said block 16 of Horton's Addition (the latter lots being owned by the lessees in fee), the building to cover substantially the whole of said four lots, to be two or more stories in height . . . *and the ground or street floor of the whole building to be constructed for stores or offices, except such parts thereof as are used for theatre entrances or exits; provided, that the main entrance to the theatre* shall be constructed and always maintained on some portion of said lots G and H, and, provided, further, that no stage entrance or exit, or entrance or exit of similar character shall ever be constructed or maintained on Fourth Street.'' (Italics ours.)

It is observed that the theatre building was to be constructed on all four lots and that the main entrance to the theatre must be constructed and always maintained on some portion of lots G and H. It is apparent from the language used that the parties contemplated constructing but *one* theatre in the building, the main entrance of which was to be, as stated, on lots G and H. It further indicates that the ground or street floor of the building was to be constructed for stores or offices,

except such parts as were used for the one theatre and its entrance or exits. The building was in fact so constructed and has been so used for approximately 20 years.

Paragraph 18 of the lease, the main one here in dispute, provides:

"THEATRE BUILDING NEVER TO BE PARTITIONED OFF BETWEEN LOTS COVERED BY LEASE AND THOSE OWNED BY LESSEE.

"18. The lessees agree so long as the new building to be erected at this time remains, that *the portion thereof to be constructed for use as a theatre*, a part of which is to be located on said lots E and F, and a part on said lots G and H, shall never be divided or partitioned off, or used or occupied separately, that is the part thereof on said lots E and F shall never be divided, partitioned or used separately from the part thereof on said lots G and H, without the written consent of the lessor first obtained." (Italics ours.)

From the language used it will appear that the parties intended and the trial court found that the portion of the building used as "a theatre," located on all four of said lots, should never be divided nor partitioned off nor used nor occupied separately without the written consent of the lessor. It is also again apparent that only one theatre was contemplated in the building since the language is cast in the singular form, and that that theatre, so constructed, will never be divided nor partitioned nor used nor occupied separately.

Paragraph 31 originally provided:

"The lessees agree that all rents, and all sums paid out or incurred by the lessor hereunder, together with interest thereon, and costs and attorney fees as herein agreed, shall be, and the same are hereby declared to constitute a first lien upon all rents and other income to accrue during the term of this lease from all improvements at any time or times located on said lots G and H, *including all rents and other income to accrue from that portion of the new building to be constructed at this time, which is to be designed and used for a theatre, notwithstanding that a portion of said theatre will be situated on said lots E and F*. . . . Provided, however, that the lessor shall have no lien for the rents and other sums above mentioned, or for any part thereof, on the fee to said lots E and F, but his lien shall be confined and extend merely to the rents and other income above mentioned. . . ." (Italics ours.)

It will appear that under this provision not only is the lessor given a lien upon the rents and other income from that part of the building on his own lots G and H, but also a

lien on all "rents and other income to accrue from that portion . . . designed and used for a theatre *notwithstanding that a portion of said theatre will be on said lots E and F.*" (Italics ours.)

Nine years later, an agreement was executed between one Jones and the plaintiff, as assignee, amending and substituting a new paragraph 31, as well as amending certain other provisions of the original lease. This amendment was made for the purpose of suspending the right of lessor to a lien on the rents, subrentals and other income from the demised premises until a certain trust indenture, executed on December 1, 1934, had been discharged. Paragraph 31, as amended, now contains a sentence that thereafter "lessor shall have no lien for rent or income with respect to lots E and F," but his lien shall be confined "to the subrentals and other income" from all improvements located on said lots G and H. It should be here noted that paragraph 31, as amended, omits the portion of original paragraph 31 containing the sentence "including all rents and other income to accrue from that portion of the new building to be constructed at this time, which is to be designed and used for a theatre, notwithstanding that a portion of said theatre will be situated on said lots E and F." It should likewise be here noted that paragraph 18 of the original lease providing that the "THEATRE BUILDING NEVER TO BE PARTITIONED OFF BETWEEN LOTS COVERED BY LEASE AND THOSE OWNED BY LESSEE," was not amended by the later agreement.

Exhibits in evidence and oral testimony show that in order to operate a new theatre in the building the proposed alterations provide for a partitioning off of the existing theatre so that the new portion would be used and occupied separately from the remaining part, and that the new theatre would have a main entrance entirely off of lots G and H; that the revenue therefrom would not be subject to lessor's lien and such alterations would eliminate 64 seats in the old theatre with a resulting reduction in its revenue.

In construing the lease under the evidence received and the instruments before it, the trial court found that plaintiff desired to make the alterations mentioned for the purpose of constructing a newsreel theatre on lots E and F, and that the building of such additional theatre would eliminate certain existing stores on those lots; that 64 seats, now a part of the present theatre, would also be eliminated as well as its

stage, and that if built as proposed, it would create a competing attraction to the present theatre; that the true intent and meaning of the original lease, and as amended, is that lessees would construct and operate only one theatre on the ground floor of the said building; that so long as the building remained, no part of said theatre should be divided or partitioned off or used or occupied separately from the remainder thereof, and that lessor should have a first lien, as security, on all rentals due from improvements on lots G and H.

Plaintiff and appellant contends that the findings are not supported and that the judgment declaring the rights of the parties is erroneous in that it is based on an improper and unwarranted construction and interpretation of the lease; that the lessee is not prevented from making the proposed use of its own property by any provision of the lease, when fairly read and reasonably applied, and argues that the principal consideration to the lessor for the execution of the ground lease was the net rent to be paid by the lessee, and also the construction of a building on the property which became a security for the payment of the rent. It is then pointed out that from the lease, originally, a theatre of any kind or type and of any seating capacity met the lease requirements; that a motion picture show without any stage could have been originally constructed upon the property under the lease; that there was no original obligation for the lessee to construct a stage or use it in connection with the theatre; that for the past ten years the stage has not been used; that the partitioning of it by a fire wall and its use for another theatre is not "the division, partition, or separate use of the part of the building on plaintiff's lots E and F from the part of the building on defendant's lots G and H''; that it is simply another lawful use of plaintiff's own property; and that such restrictions are not favored by law, citing such cases as *Farquharson* v. *Scoble,* 38 Cal.App. 680, 683 [177 P. 310] ; and *Fairchild* v. *Raines,* 24 Cal.2d 818, 831 [151 P.2d 260]. It is then argued that such restrictions as are indicated should be construed strictly against the defendant and in favor of the plaintiff and many cases are referred to as setting forth this general rule.

It is then argued that defendant's contractual lien accruing after default on all subrents and other income from the improvements located on his property, including the theatre

income, does not give defendant the right to veto the proposed or any other lawful use of lessee's own property; that the existence or extent of defendant's rights after default has no bearing whatever on plaintiff's right to convert the stage space to some lawful use, and that considering the community interest and the fundamental principles of the law, plaintiff should be allowed to use this property in the manner that is economically most beneficial to it and the public.

In the covenant involved in this case the plaintiff was the promisor. The clause complained of was placed there for some purpose by the parties sought to be bound. The primary object of all interpretation is to ascertain and carry out the intention of the parties. All the rules of interpretation must be considered and each given its proper weight, where necessary, in order to arrive at the true effect of the instrument. Section 1636 of the Civil Code provides that a contract must be so interpreted. The intention of the parties should be given effect regardless of technical rules of construction. (*Burnett* v. *Piercy,* 149 Cal. 178, 189 [86 P. 603]; *London & San Francisco Bank* v. *Parrott,* 125 Cal. 472 [58 P. 164, 73 Am.St.Rep. 64]; Code Civ. Proc. § 1860.)

The lessor originally was expressly given a lien, by paragraph 31 of the lease, on all rents and other income to accrue from the theatre, notwithstanding that a portion of said theatre was to be situated on said lots E and F. That provision protected lessor's lien on the future income which might accrue from the *entire* theatre, and prohibited the partitioning off of any part thereof.

Plaintiff concedes that the property line separating the lots owned in fee by the plaintiff from those owned in fee by the defendant crosses the theatre auditorium at approximately its center. Under plaintiff's contention, therefore, if held to be tenable, it would be possible for it to cut in half the theatre capacity, rents and income on which lessor had been given a lien by paragraph 31. We do not believe this to be a proper interpretation of the effect of the amendment of that section. If plaintiff could, under the terms of the agreement, eliminate the use of 64 seats, it could, just as well, eliminate the use of nearly half of the seats and build the partition or wall on the property line and deprive defendant of about one-half of its original security.

There is no question that prior to the amendment of paragraph 31, defendant had a lien upon the entire income

from the theatre, as originally constructed. Plaintiff now argues that under the amendment of that paragraph, defendant now has only a lien on that part of the income of the theatre actually received from that portion located on lots G and H. A technical construction of the amendment might so indicate. Just how much of the box office proceeds defendant would be entitled to claim under his lien under this construction seems indeterminable to us for many apparent reasons. What portion of the income was derived from seats located on lots E and F, as distinguished from those located on lots G and H, and what portion the moving picture screen and horns, located on lots E and F, contributed to the entertainment furnished by the projector situated on lots G and H would be impossible, mathematically, to calculate. Indubitably, it was not the intention of the parties that defendant's right to a lien on the proceeds and income of the theatre should attach only to such an uncertain division of its entire income.

Paragraph 18 should be interpreted in harmony with paragraph 31, which gave defendant a first lien on all rentals and other income from the demised premises located on lots G and H, which would include the rentals from said theatre. Paragraph 18 of the lease must have been placed there for some definite reason. It provides that "THEATRE BUILDING NEVER TO BE PARTITIONED OFF BETWEEN LOTS COVERED BY LEASE AND THOSE OWNED BY LESSEE." Since this provision of the original lease was never amended, the parties may have anticipated the very same alteration now contemplated, which might result in a competing theatre operating in the same building. If plaintiff's construction of the lease should prevail, a financial failure of one or the other or both of the picture theatres might cause the annual rental of $15,000 per year, payable quarterly and guaranteed by plaintiff to defendant, to become insecure. The mere fact that the stage portion and back-stage facilities of this theatre have not been used for the presentation of dramas or other stage shows in recent years has no particular bearing upon the question whether the defendant's consent should be obtained before making the contemplated improvements and eliminating these facilities. It is obviously impossible for the plaintiff to say that there will never be any public demand for such entertainment, nor any further use for the large stage.

The trial court was justified in deciding that it was not the intention of the parties that the lessee might cut off, and eliminate this stage and its facilities, and permanently con-

vert the true theatre which the lessees were required to and did build, into two "movie houses," without the consent of the lessor.

Moreover, the suggested alterations would, without the lessor's consent, violate the other provisions of the lease, as already mentioned. Not only did the lease provide for the erection and use of *one theatre* but it provided that so long as the building to be erected should remain the portion "constructed for use as a theatre," it should not be "divided or partitioned" in a certain manner, and that "the main entrance to the theatre" should be constructed and always maintained on lots G and H. The agreement provides for one theatre, with its main entrance always to be kept on the lessor's lots, and the reasonable inferences from these provisions would forbid the use of any other theatre with another "main entrance" on the other lots, so long as that building remained.

For twenty years the parties have occupied and used the building in harmony with the interpretation placed upon the lease by the trial court. In 1942, plaintiff attempted to obtain defendant's consent to the alteration. The claimed right of plaintiff, under the lease, to make the alteration without the lessor's consent was not pressed until this action was filed in September, 1945. The construction placed upon the contract by the parties is persuasive and the law recognizes that the practical construction made by them is cogent evidence of their intent. (*Roy* v. *Salisbury*, 21 Cal.2d 176, 184 [130 P.2d 706] ; *Johnston* v. *Landucci*, 21 Cal.2d 63, 70 [130 P.2d 405, 148 A.L.R. 1355].)

Plaintiff brought this action and alleged that there is "doubt as to the interpretation" of certain provisions of the lease. The trial court received evidence on that subject. From the facts established, that court was entitled to adopt such inferences as arose therefrom and which appeared reasonable to it, and to determine the intent of the parties in accordance with the written instrument. It adopted defendant's and rejected plaintiff's interpretation. The evidence and inferences justifiably drawn therefrom support the trial court's findings and judgment entered herein. (*Medico-Dental Bldg. Co.* v. *Horton & Converse*, 21 Cal.2d 411, 430 [132 P.2d 457] ; *Estate of Rule*, 25 Cal.2d 1, 10 [152 P.2d 1003, 155 A.L.R. 1319] ; *Stevenson* v. *County of San Diego*, 26 Cal.2d 842, 844 [161 P.2d 553] ; *Estate of Hotaling*, 72 Cal.App.2d 848, 852 [165 P.2d 681].)

Lastly, plaintiff strenuously opposes the trial court's allowance of $1,500 attorneys' fees claimed due to defendant under the provisions of the agreement in the lease. Paragraph 30 thereof provides as follows: "LESSEE TO PAY LESSOR'S EXPENSES IN CASE OF SUIT. . . . Should the lessor be made a party, *without his fault,* to any litigation brought by or against the lessees . . . or because of the failure or refusal of the lessees to perform or observe the covenants and conditions of this lease on their part . . . or should the lessor be compelled to employ an agent or attorney . . . to enforce the performance or observance of any of the covenants or conditions of this lease on the part of the lessees . . . then, and in each and every such event, the lessees agree to pay the reasonable cost thereof, including a reasonable fee for the services so rendered. . . ." It is the argument of counsel for plaintiff that since the trial court's judgment, in interpreting the lease, must be reversed by this court on the main issue, the allowance of attorney's fees cannot stand since such a determination would establish the fact that defendant wrongfully objected to the action proposed to be taken by plaintiff, and therefore it could not then be said that defendant was made a party *"without his fault."* The argument of counsel loses its force since the judgment of the trial court has been sustained by this court. The provisions of the lease providing for allowance of reasonable attorneys' fees to defendant under the circumstances and findings here related justify the judgment rendered as to this item.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied June 30, 1947, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1947.