[Crim. No. 7370.   Second Dist., Div. Three.   May 23, 1961.]

THE PEOPLE, Respondent, v. LENORE MILLER,
Appellant.

Enger & Yardum for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

SHINN, P. J. — In an information Lenore Miller was charged in Count I with a violation of the Corporate Securities Law, section 26104, subdivision (a), of the Corporations Code of the State of California, and in Count II with the crime of grand theft. In a trial without a jury, defendant was found guilty on Count I and not guilty on Count II; she appeals from the judgment and the denial of a motion for a new trial.

The record shows that some time prior to July 1958, the defendant and the complaining witness, Daiber, were acquainted and that there was more than a casual relationship between them; they had been in a business relationship in 1952 that failed, and out of which Mr. Daiber secured a judgment against the defendant for $9,200.

Some time later defendant began writing Bible stories. In the spring of 1958, Mr. and Mrs. Daiber heard a tape recording of one of the stories. Defendant described to them her plans to take the scripts of the stories to Dr. Norman Vincent Peale in New York to solicit financing to have them produced and filmed. The Daibers offered to help finance her trip to New York and the fixing of her teeth, so that she would be more presentable. She explained that if she could get the films produced she thought she could pay Mr. Daiber the money she owed him. Mr. Daiber testified he believed he might be able to get back the money he had previously lost if

defendant's scripts were produced and filmed. He testified that he was going to be a part owner of the particular business. He agreed to help with the financing.

An agreement was drawn up by Mr. Daiber's attorney which read:

### "MEMORANDUM AGREEMENT

"THIS AGREEMENT made and entered into this 3rd day of July, 1958 by and between Lenore Miller and Corinne Ross residing at 232 North Doheney Drive, Los Angeles, California, hereinafter called First Party; and Milan P. Daiber and Nona B. Daiber residing at 443 South New Hampshire, Los Angeles, California, hereinafter called Second Party;

### "WITNESSETH:

"WHEREAS, First Party has written and now owns ten television scripts based on the first ten chapters in the New Testament and contemplated writing a large number of additional scripts based on Biblical stories, and,

"WHEREAS, First Party is anxious to sell an interest in the scripts that have been written and an interest in the scripts to be written for money to enable her to go to New York for the purpose of raising money to putting the scripts on film for television and other purposes, and

"WHEREAS, Second Party is anxious to acquire an interest in said scripts and is willing to advance money to First Party for said interest provided the money is used for a trip to New York for the purpose of procuring money to put said scripts on film subject to the terms and conditions hereinafter set out.

"Now, THEREFORE, for and in consideration of the sum of $500.00 in hand paid from Second Party to First Party, the receipt of which is hereby acknowledged, and other good and valuable consideration as hereinafter enumerated, it is mutually agreed as follows:

"1. That Second Party has heretofore advanced to First Party the total sum of $557.00 of this date, and has agreed to advance the additional sum of $443.00 to be used by First Party to fix her teeth and make the trip to New York for the purpose of procuring additional money to put First Party in a position to put said scripts on film.

"2. In return for said money First Party agrees to and does hereby assign to Second Party a royalty of 25% of each and every consideration that First Party may receive from said scripts either in the form of cash advances or cash con-

sideration of money received from royalties, until Second Party get their advances back, then 5% royalty.

"3. The parties hereto agree to determine the actual amount of the indebtedness will be determined if and when First Party returns from New York.

"4. First Party agrees to file a signed copy of this Agreement with any person or corporation with whom First Party might contract with to put the scripts on film and distribute the same. The intent of the parties hereto is that a copy of this agreement be filed with anyone who might contract with First Party in regard to said scripts or any film or story derived therefrom.

"5. First Party agrees to submit to Second Party any and all contracts that First Party might enter into concerning said scripts or any film or story or any other salable product derived therefrom.

"IN WITNESS WHEREOF, the parties hereto have signed this Agreement the day and year first above written.

| /s/ | Lenore Miller |
| --- | --- |
| /s/ | Corinne C. Ross |
| | FIRST PARTY |
| /s/ | Milan P. Daiber |
| /s/ | Nona B. Daiber |
| | SECOND PARTY" |

The Daibers advanced $433. Defendant completed ten scripts, went to New York and left all of them with a member of Dr. Peale's staff. She also had her teeth fixed.

It was as a result of the transaction embodied in this written agreement that defendant was found guilty of unlawfully selling and issuing a security without first applying for and receiving a permit from the Corporation Commissioner.

Defendant contends on appeal that the agreement embodied a joint venture and was therefore exempt under Corporations Code, section 25100, subdivision (m), which reads: "[*Exempt classes of securities*] Except as otherwise expressly provided in this division, the Corporate Securities Law does not apply to any of the following classes of securities: . . . (m) Any bona fide joint adventure interest, except such interests when offered to the public."

The claim that the agreement created a joint venture was raised for the first time by defendant's counsel upon a motion

for a new trial. The trial judge denied the motion, stating that although the violation was technical and that it was disturbing to him that the law would include this type of activity, the agreement was a security within the meaning of the Corporate Securities Law.

Whether a written agreement constitutes a security within the Corporate Securities Law is a question of law and reviewable as such by an appellate court. (*People* v. *Dutton,* 41 Cal.App.2d 866, 872, 873 [107 P.2d 937].)

Whether defendant and the Daibers created a joint adventurers' relationship as between themselves depended on their actual intention, which was to be determined in accordance with the ordinary rules governing the interpretation of contracts. (*Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751, 764, 765 [128 P.2d 665].)

Where the determination whether a relationship is a joint venture requires the court to choose between opposing inferences as to the intentions of the parties the question becomes one of fact; but the relationship in this case arose solely from the written agreement, which clearly discloses the intentions and understanding of the parties; therefore, under ordinary rules governing the interpretation of written contracts, the question whether a joint venture was created is one of law. (*Stevenson* v. *San Diego County,* 26 Cal.2d 842, 844 [161 P.2d 553].)

The common definition of a joint venture is a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge. (*Sime* v. *Malouf,* 95 Cal.App.2d 82, 95 [212 P.2d 946, 213 P.2d 788].) In most cases the courts have not established any very fixed or certain boundaries, but have been content to determine merely whether the proven or conceded facts in the particular case constituted the relationship of joint adventurers. (*Fitzgerald* v. *Provines,* 102 Cal.App.2d 529, 537 [227 P.2d 860].)

The written agreement in the instant case contains no distinct markings that should deny its classification as an agreement for a joint venture. On the contrary it possesses every element ordinarily found in such agreements. The defendant was in need of finances with which to proceed with her plans to have her Biblical stories produced and filmed.

The written agreement evidences that Mr. and Mrs. Daiber had entered into a specific venture for the purpose of helping to get the scripts produced and filmed; Mr. and Mrs. Daiber were to share in the profits if any were realized; they were to control the way their "advances" would be used; and they retained partial control over any further arrangements by requiring the defendant to submit to them any future contracts pertaining to the Biblical scripts. Pursuant to the agreement the sums provided were used for the common benefit of the parties.

In *Oakley* v. *Rosen*, 76 Cal.App.2d 310 [173 P.2d 55], the facts were similar to those of the instant case. The defendant had a dramatic production contract with the authors of a play. Defendant was in need of finances with which to proceed with his plans to exploit the play. Plaintiffs supplied a portion of the funds to defendant for a percentage of the profits to be realized from the dramatic production contract. Plaintiffs brought action to recover the money paid for the undivided interest in profits agreed upon, basing their right of recovery upon the fact that defendant sold such interest without first having obtained a permit pursuant to the Corporate Securities Act. In determining that a joint venture existed the court stated (p. 313): "Rosen had acquired by contract the right to exploit a play. He was in need of finances with which to proceed with his plans. Appellants supplied a portion of the funds on the conventional basis of taking their pro rata shares of the profits to be earned from the specific enterprise which was to be conducted by appellee as the producer. Because it does not differ in its essentials from joint ventures for mining, building, promotion and other undertakings, it can be nothing but an agreement for a joint adventure. . . . The fact that appellee was to produce the play without the assistance of appellants makes it nonetheless a joint venture. Many successful enterprises owe their pronounced achievements to the program and direction of a single mind."

We hold that the written agreement clearly demonstrates the intentions of the parties to create a joint venture and as such was not a security under the Corporate Securities Law.

The appeal from the denial of the motion for a new trial is dismissed and the judgment is reversed, with instructions to the court to dismiss the cause.

Vallée, J., and Ford, J., concurred.