[Civ. No. 25736. Second Dist., Div. Two. May 28, 1962.]

ANCHOR CASUALTY COMPANY, Cross-complainant and Respondent, v. SURETY BOND SAVINGS AND LOAN ASSOCIATION, Cross-defendant and Appellant.

Minsky, Garber & Rudof and B. W. Minsky for Cross-defendant and Appellant.

Anderson, McPharlin & Conners and Kenneth E. Lewis for Cross-complainant and Respondent.

FOX, P. J.—This is an action commenced by the City of Los Angeles against Ben Greenblatt, doing business as Ben G. Construction Company, and Anchor Casualty Company, upon a subdivision bond. Anchor Casualty Company filed a cross-complaint for declaratory relief and for damages against the City of Los Angeles, Ben Greenblatt and Surety Bond Savings and Loan Association. Surety Bond Savings and Loan Association has appealed from the judgment rendered against it in favor of Anchor Casualty Company.

Ben Greenblatt, a general contractor doing business as Ben G. Construction Company, desired to construct and subdivide a residential housing project in the City of Los Angeles. Pursuant to law, it was necessary for Mr. Greenblatt to obtain a permit from the City of Los Angeles in order to subdivide and construct these houses. Greenblatt submitted to the city for approval a tentative map for subdivision of the land and, pursuant to law, by way of certificate of dedication signed by him, indicated that he would cause certain streets, street-lighting facilities, curbs and sidewalks to be put in and dedicated to the City of Los Angeles. The city through its city engineer estimated that the amount needed for these offsite improvements which were to be dedicated to the city was the sum of $55,070 and, pursuant to law, required Greenblatt to obtain a bond from a surety company guaranteeing faithful

performance of the offsite improvements in the aforesaid sum. This subdivision permit bond was executed by respondent as surety with Ben G. Construction Company as principal and inured to the benefit of the City of Los Angeles as named obligee.

Before executing such a bond, the respondent requested and obtained from the appellant its written commitment that in the event a loan was made, the appellant savings and loan association would disburse the sum of $55,000 for the payment of offsite improvements in order to guarantee the completion of such improvements. This written commitment was in the form of a letter from appellant to respondent dated May 16, 1956, and in reliance upon this letter, the bond was written. This letter was as follows:

"May 16, 1956

"Anchor Casualty Company
2960 Wilshire Boulevard
Los Angeles 5, California
Attention: Mr. Witt

Gentlemen:

"We are writing to you at the request of Mr. Ben Greenblatt. We wish to advise that we are contemplating the financing of construction of homes in Tract 21132 owned by Mr. Greenblatt.

"In the event that we do make these loans, we shall disburse the sum of $55,000.00 for the payment of offsite improvements in order to guarantee the completion of said improvements.

"Very truly yours,

"SURETY BOND SAVINGS AND LOAN ASSOCIATION

"/s/ Orville V. Long, Secretary."

Thereafter subcontractors commenced the construction of the required improvements.[1] These offsite improvements, however, were never completed, i.e., certain streets were never completely paved and a street-lighting system was never constructed or installed. As a result of the default of Ben Greenblatt in not causing said improvements to be completed under the aforementioned bond, respondent, as surety on said bond,

---

[1] It appears that neither Ben Greenblatt nor the Ben G. Construction Co. did any actual work on these improvements.

was required to and did cause the street paving work to be performed and has paid therefor the sum of $11,713.66.

The City of Los Angeles commenced an action on the faithful performance bond against Ben Greenblatt, doing business as Ben G. Construction Company and respondent, Anchor Casualty Company, for the amount of money required to construct and install the street-lighting system. The defendant Ben Greenblatt has made no appearance in the action but has filed a petition in bankruptcy under chapter XI and the United States District Court has ordered the City of Los Angeles to refrain from taking further proceedings in this case against him. At the trial, the court found that the plaintiff City of Los Angeles was damaged in that there had been a failure to complete the street-lighting system pursuant to the agreement and entered judgment against the bonding company, the respondent, in the sum of $6,496.

Respondent filed a cross-complaint for declaratory relief and damages naming the City of Los Angeles, Greenblatt and appellant as cross-defendants wherein respondent alleged that it desired to have the rights of all the parties under the agreements in question declared and in addition thereto, claimed damages against appellant for the amount paid out by respondent to complete the offsite improvements and for the amount necessary to construct and install the lighting system as evidenced by the judgment recovered by the city against respondent for $6,496. There is also a "stay" order from the United States District Court restraining the respondent from proceeding against the cross-defendant, Ben Greenblatt. The trial court found that respondent had expended the sum of $11,713.66 for work done on the said offsite improvements. The trial court granted a judgment against appellant in favor of the respondent in the sum of $18,209.66, this amount being the total of the judgment rendered against respondent ($6,496.00) and the previous expenditures made by respondent to complete the offsite improvements ($11,713.66). It is from this judgment in favor of respondent that this appeal has been taken.

Appellant's position is that certain findings are not supported by the evidence. ▓▓ In regard to appeals on this ground, the general rule is stated in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367 [210 P.2d 757], at page 370: "[W]here the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as

to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom."

■ Appellant argues that it was error for the trial court to find there was a written agreement between the parties. Appellant attacks the agreement in writing dated May 16, 1956 (set out *supra*), on the ground that there was no consideration given for it, and also raises the question of mutuality. Although appellant is elaborate in its semantic arguments, the true statement of the law supports the ruling by the trial court on both these issues. The trial court found consideration in the form of a benefit to the promisor, Surety Bond Savings and Loan Association, in that, by writing the letter to Anchor Casualty Company, appellant was able to get a bond executed. The result of this execution was that a permit could be granted and offsite improvements in turn would be made. As the trial court pointed out: "It was to their advantage to have loans on houses that had nice offsite improvements, streets, sewers, electric lightings, better security. There is your consideration." Section 1605 of the California Civil Code defines "consideration" as "Any *benefit* conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." (Emphasis ours.)

Consideration is also present in this agreement in the form of a detriment to the promisee, i.e., respondent Anchor Casualty Company executed a bond and became obligated thereon. ■ "A consideration is sufficient to support a contract if it is either beneficial to the promisor or detrimental to the promisee and the surrendering or foregoing of a legal right constitutes a sufficient consideration for a contract if the minds of the parties meet on the relinquishment of the right as a consideration. (12 Cal.Jur.2d, Contracts, pp. 224-227.)" (*Blonder* v. *Gentile,* 149 Cal.App.2d 869, 875 [309 P.2d 147].) The fact that this consideration moved to a third party does not lessen its effect. ■ "A consideration for a contract is equally valuable whether it move to the other party bound or a third party." (*Creamery Package Mfg. Co.* v. *Bennett,*

48 Cal.App. 706, 709 [192 P. 328].) Consideration does not have to move to the promisor. (*First National Bank of Stockton* v. *Pomona Tile Mfg. Co.*, 82 Cal.App.2d 592, 603 [186 P.2d 693].)

 Consideration may also be found in this case by relying upon the principle of detrimental reliance or promissory estoppel, as stated in section 90 of the Restatement of Contracts: "A promise which a promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." This doctrine has been accepted by the California Supreme Court (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409, 413 [333 P.2d 757]) and by this court (*Wade* v. *Markwell & Co.*, 118 Cal.App.2d 410, 419 [258 P.2d 497, 37 A.L.R.2d 1363].) In the instant case the appellant knew that respondent would rely on the letter. Appellant knew the reason for asking for the letter, and as a matter of fact, knew that respondent had relied upon the letter and the promises contained therein as an inducement for the execution of the bond actually executed by respondent to the City of Los Angeles. That this is true is manifested in the fact that if the letter were not received respondent would never have executed the bond. Such detrimental reliance suffered by respondent is adequate consideration to support the promise by appellant to disburse the $55,000 to guarantee completion of the offsite improvements.

 Appellant makes the point that there was no mutuality of obligation in that the parties were merely contemplating making the loan. It argues that if respondent did not issue its bond the appellant could not recover for any damage; and if appellant did not make the loan respondent could not recover. This position is clearly without merit because the true interpretation of the agreement herein is that the agreement constituted a unilateral contract. This is a bargain of an act for a promise, in this case a conditional promise. A contract comes into existence when the act is completed, i.e., when respondent executed the bond. The promise to "disburse the sum of $55,000.00 for the payment of offsite improvements in order to guarantee the completion of said improvements" is conditioned on appellant's making the loan. Once the loan was made this promise became absolute. It has long been the rule that in unilateral contracts such as we

have here, the want of mutuality is no defense. (*Mathewson* v. *Fitch*, 22 Cal. 86, 94; *Bandoni* v. *Walston*, 79 Cal.App.2d 178, 183 [179 P.2d 365].)

We now turn to the construction and interpretation of the contract. Appellant claims that the evidence does not support the finding that it was the intention of the parties that appellant would pay out $55,000 to guarantee payment of offsite improvements. Appellant recites various code sections of the California Civil Code and sets forth at great length semantic arguments, taking up a considerable portion of its brief, seeking to establish that the intention of the parties was never such that appellant should have been bound in this case. A true reading of the code sections involved and the cases interpreting them manifests a position contrary to that asserted by appellant. The rules of construction that govern this case might be stated as follows: In interpreting the language of the contract the court should seek to determine the intention of the parties and to arrive at a reasonable interpretation thereof. (Cal. Civ. Code, §§ 1636 and 1638; *Rost* v. *Bryson*, 118 Cal.App.2d 489 [258 P.2d 72].) The court may also look to surrounding circumstances in order to decide what is reasonable and what the parties intended by the language used. (*O'Farrell* v. *American Trust Co.*, 149 Cal.App.2d 691 [309 P.2d 60]; *Bradner* v. *Vasquez*, 102 Cal.App.2d 338 [227 P.2d 559].) Both prior negotiations and prior conversations may be construed as well as the subsequent acts of the parties in ascertaining the true intention of the parties to the contract. (*Woodbine* v. *Van Horn*, 29 Cal.2d 95 [173 P.2d 17]; *Diebold, Inc.* v. *State Board of Equalization*, 168 Cal.App.2d 628, 639 [336 P.2d 650].)

In the case at bench it is evident that both parties understood that appellant was going to set aside certain monies and control them for the payment of offsite improvements. The manager of appellant so testified himself and even notified his escrow officer that the $55,000 was to be disbursed for the payment of offsite improvements. Mr. Long, the manager of appellant, testified that had he known the Ben G. Construction Company did not itself do any offsite improvements, he would not have paid out the money and gave as the reason ''because we said we would pay out fifty-five thousand for offsite improvements.'' Based upon the interpretation which the parties themselves put on the agreement the appel-

lant was obligated to pay out the $55,000 in such a manner as to guarantee that the offsite improvements would be paid for. ■ In *California Building Co. of San Diego* v. *Halle*, 80 Cal.App.2d 229 [181 P.2d 404], the court stated (p. 237): "The construction placed upon the contract by the parties is persuasive and the law recognizes that the practical construction made by them is cogent evidence of their intent. [Citations.]"

■ Long, the manager of appellant, testified that he had written the letter after a conversation with Mr. Witt who was employed by the respondent. Witt did not dictate the language of the letter; the language was placed in the letter by Long. Any ambiguities in a contract are to be construed against the party who drew or prepared the written agreement. (Civ. Code, § 1654; *Pico Citizens Bank* v. *Tafco Inc.*, 165 Cal.App.2d 739, 749 [332 P.2d 739].) Long further testified that after the letter was written and the respondent had executed its bond, he, Long, gave instructions to his escrow officers by means of written notations on the loan card that they should hold $55,000 for offsite improvements. Long further indicated that all payments were to be checked with him or with his escrow officer. Long then testified that the reasons for these notations were "we wanted only to make sure that fifty-five thousand was paid out for offsite improvements."

■ It is an established rule of construction that the court may look to subsequent acts of the parties to ascertain their true intentions. (*Shelley* v. *Nichols*, 120 Cal.App.2d 602, 604 [261 P.2d 771]; *Wilson* v. *Corrugated Kraft Containers, Inc.*, 117 Cal.App.2d 691 [256 P.2d 1012].) ■ It is clear from the construction and interpretation placed upon the agreement of May 16, 1956, by the parties themselves that both parties contemplated that the appellant would control the payment of monies through its escrow officer in such a manner that the $55,000 would be paid out only for offsite improvements.

In its semantic argument appellant argues that its only duty under the terms of the agreement was to "disburse," or "pay out," the $55,000. It rejects the remaining portion of the agreement as merely being an adverbial clause. Appellant would have us therefore substitute its interpretation of the contract for that of the trial court. This we are not at liberty to do. The trial court adopted a reasonable interpretation of the agreement, i.e., the disbursement was to be made in order

*to guarantee* the completion of the offsite improvements and should be made *only* in a way designed to effect such guarantee. ▉ In the instant case, parol evidence was introduced in aid of interpretation of the contract and the evidence was such that conflicting inferences could be drawn therefrom. "In such case the rule is that a reviewing court will accept or adhere to the interpretation of a contract adopted by the trial court and not substitute another of its own." (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757]; *Estate of Rule*, 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) ▉ It is our view that the interpretation of the trial court was reasonable and supported by substantial evidence.

▉ Appellant finally contends that the position of the trial court is unreasonable because if the contractor failed to do any work at all, appellant would be obligated to pay the entire cost. This statement is unfair to the trial court's interpretation of the agreement. Appellant had the obligation only to provide $55,000 for the completion of offsite improvements and to reasonably guarantee the $55,000 would be used for that purpose. If the contractor caused no work to be done on the improvements, the appellant should not have paid out any money. It is true the appellant would still be obligated to provide $55,000 to finish the improvements but appellant agreed to loan this $55,000 to Greenblatt for this very purpose. The surety company, Anchor Casualty, was merely protecting itself by demanding this agreement. There is nothing wrong with this contrary to what appellant would have us believe.

In this case, however, appellant failed to perform its agreement. The evidence shows that appellant paid over $23,000 to Ben G. Construction Company out of the $55,000 that was to be set aside and earmarked for offsite improvements. All payments, other than this sum of approximately $23,000, were made payable to other subcontractors who had done work on the offsite improvements, which payments were verified by affidavits and other supporting documents. In the case of the payments to Ben G. Construction Company, the supporting data attached to the vouchers was insufficient to justify such payment. The data that is attached to these vouchers should have put appellant upon notice that the money was not going for any offsite improvements. This is where appellant breached the agreement and it should be liable for any damages directly resulting therefrom. The trial court was

therefore correct in granting judgment in favor of respondent and against appellant for the sum paid out by respondent to complete the paving of the designated streets and for the amount of the judgment against respondent for the failure to construct and install a lighting system. "The basic difficulty with defendant's argument is that he would have this court reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this. [Citations.]" (*People* v. *Gould*, 111 Cal.App.2d 1, 8 [243 P.2d 809].)

In addition to appealing from the judgment, appellant has appealed from the trial court's order denying a new trial. "No appeal lies from the trial court's denial of defendants' motion for new trial; . . ." (*Hamasaki* v. *Flotho*, 39 Cal.2d 602, 608 [248 P.2d 910].) The appeal therefrom should be dismissed.

The judgment is affirmed. The appeal from the order is dismissed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 25, 1962. Dooling, J.,* participated in place of Traynor, J.

---

*Assigned by Chairman of Judicial Council.