[Civ. No. 13966.   Second Dist., Div. Three.   Oct. 28, 1943.]

NORINS REALTY COMPANY, INC. (a Corporation), Respondent, v. SAMUEL W. HOYTT, Appellant.

196

Zagon, Aaron & Fink, Ben L. Blue, Robert Kingsley and Louis B. Minter for Appellant.

Horowitz & McCloskey for Respondent.

SHINN, Acting P. J.—Defendant appeals from a judgment in the sum of $7,889.36, as the balance of the purchase price of several thousand acres of land contained in Pajarito Spanish Grant, in the County of Bernalillo, New Mexico, which he agreed to purchase from plaintiff at a price of $8.00 per acre. Plaintiff and defendant were real estate brokers engaged in the business of selling in California and elsewhere subdivided lands situated in New Mexico. The nature of the business which they conducted, and in which defendant had been employed as a salesman for plaintiff, is frankly described in appellant's opening brief as follows: "For many years, however, both parties had been engaged in the business of selling land of a kind similar to that herein involved, and located in the same vicinity as this land. The general mode of operation was to commence the drilling of an oil well, either upon a portion of the land to be sold or upon land immediately adjoining it, and then to sell land to the general public in small blocks upon the inducement that large speculative profits would be made if the oil well then being drilled resulted in commercial production." As defendant

acquired title from plaintiff he made resales in small parcels to the public; he made payments until he had acquired some 4,000 acres, when the parties fell out, and defendant refused to make further payments. Plaintiff tendered a deed to 2,056.26 acres, which it contended was yet to be acquired and paid for, and sued for $16,250.48 as the balance due at $8.00 per acre.

The judgment for $7,889.36 was based upon a finding that defendant was required to purchase and pay for only 986.17 acres in addition to 3,889.97 acres which he had already acquired and was conditioned upon the conveyance to defendant of 986.17 acres to be selected by defendant or by plaintiff if defendant failed to make a selection.

Defendant relies upon certain special defenses, which were rejected by the trial court. These are: (1) That by the terms of the agreement he had a right at any time to withdraw from it and, upon quitclaiming his rights thereunder, be relieved from all further obligation. (2) That plaintiff had breached the agreement in the following respects: (a) that it had failed to keep in force a permit of the Real Estate Commissioner of California authorizing sales of said land to be made in California; (b) that it had sold parcels of land covered by the agreement to persons other than defendant, in violation of the agreement; (c) that while it had agreed to sell defendant approximately 6,000 acres in the grant, it owned and could have delivered to defendant no more than about 4,000 acres. (3) That defendant purchased and paid for 776.28 acres which were not covered by the agreement, without knowing that they were not so covered, and that that acreage should have been deducted from the 986.17 acres which the court held he was obliged to pay for, which would have reduced his obligation to the purchase of only 209.89 acres, for which he would owe only $1,679.12.

The paragraph of the contract upon which defendant founds his right to excuse himself from further performance reads as follows: "12. It is agreed by the Buyer that it is his primary intention to re-sell said land to the public, and in the event that he does not continue to make honest, conscientious and continuous efforts to sell said property to the public for a period of thirty (30) consecutive days, then and in that event such failure shall be deemed to be a breach of this contract by the Buyer, and further, the Buyer agrees to waive his rights to purchase any land from Seller, (except-

ing, of course, land necessary in order to complete his installment contracts) and upon receipt of quit-claim from Buyer to Seller, the Seller waives any claims that he might otherwise have against said Buyer, and Seller shall no longer be bound by the provisions of paragraph '6' herein.'' (Paragraph 6 bound plaintiff not to sell to others while defendant's contract was in effect.) The trial judge, deeming the provisions of this paragraph to be ambiguous, received evidence of conversations between the parties during their negotiations upon the matter of the possible failure of defendant to carry on a continuous sales campaign for resale of the land. Defendant had alleged as a special defense that the Real Estate Commissioner in November, 1939, refused to keep in force the permit or to issue another permit for the sale of said land and that because thereof defendant was obliged to and did discontinue the resale of the land and sold none thereafter, and that defendant on November 30, 1940, offered in writing to quitclaim to plaintiff all the unsold portion of the land, but was unable to prepare a quitclaim deed because he did not know and could not ascertain a correct description of said land.

The defense based upon said paragraph 12 was held to be unavailing for two reasons. The court construed the provisions of the paragraph to mean that the failure of defendant for 30 days to continue ''honest, conscientious, and continuous efforts to sell said property to the public'' would give plaintiff the right to refuse further performance under the agreement, but that such failure on defendant's part would not relieve him of his obligation to purchase and pay for the remainder of the acreage. The second ground for the rejection of this defense was that the court found it to be untrue in fact, that is to say, the court found it to be untrue that the Real Estate Commissioner refused to keep in force the permit or issue a new one; or that defendant was obliged to and did discontinue selling land in California after the month of November, 1939, for the reason that a permit had been refused; that it was untrue that it was or became impossible for said defendant to sell said real property to the public, but that he continued to sell land until November 30, 1940, which was one day before the balance of the purchase price fell due, and that it was untrue that defendant for any reason was unable to prepare and deliver to plaintiff a quitclaim deed to the unsold portion of said land.

The court placed a proper construction upon the provisions of said paragraph 12, regardless of any supposed ambiguity. Defendant's argument is by no means a new one. It has frequently been contended under similar circumstances that one of the contracting parties could at will relieve himself of the obligation to render further performance, but these arguments have been held unavailing where they would defeat the purpose of the agreement. Where the parties to a contract have undertaken reciprocal obligations for the accomplishment of a final purpose, such as the transfer of title to property or for the use and occupancy of it for a definite term, and where from the entire contract it is clear that performance on each side is obligatory and not optional, the courts have consistently construed provisions for termination in case of nonperformance to be for the benefit only of the one who has performed. The party for whose benefit the right of termination is given is of course the only one who can exercise it. Defendant did not take an option to buy the property; he made an unqualified agreement to buy it. He could not evade his obligation by defaulting therein and then claim for himself a right to terminate the contract which was intended solely for the benefit of the seller.

In *Central Oil Co.* v. *Southern Refining Co.*, (1908) 154 Cal. 165 [97 P. 177], the defendant relied upon a provision of its purchase agreement as excusing its refusal to continue purchases of oil, which was in the following language: "This contract shall commence with the 1st day of July, 1904, and continue monthly thereafter for the period of one year and the violation of any of the terms or conditions thereof by either party hereto shall work a forfeiture thereof, and this agreement shall thereupon become void and of no effect." Defendant having appealed from an adverse judgment, the court said (p. 166): "Upon appeal appellant's first and principal contention is that by force of the terms of the contract itself, when defendant violated it, the agreement became 'void and of no effect'; that this provision means that the violation terminated the contract and that consequently plaintiff had no right of recovery under it. Clearly appellant misconstrues the force of the language upon which it relies. That language means that by a violation of the terms of the contract the rights of the party violating it cease, and as to that party and to that extent, the agreement becomes void and of no effect. It would be an extraordinarily unreasonable con-

struction to give the language the meaning for which appellant contends. It would work the destruction of the contract itself and leave this solemn writing as an expression of the mere whim of the parties, for 'a promise which is made conditional upon the will of the promisor is generally of no value, for one who promises to do a thing only if it pleases him to do it, is not bound to perform it at all.' (9 Cyc. 618.) Performance by the party not in fault is always excused by the wrongful refusal to perform by the other party. The rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party. (Civ. Code, secs. 1511, 1512, 1514.) Such has uniformly been the construction put upon language such as this when found in contracts. [Citing cases.]'' The principle is restated in *Bank of America etc. Assn.* v. *Moore,* (1937) 18 Cal.App.2d 522 [64 P.2d 460], where additional authorities are cited.

The construction placed upon the paragraph is supported by other provisions for termination in case of failure of either party to perform, which expressly give the right to the party not at fault and make it clear that performance by defendant was obligatory. We refrain from quoting them since our conclusion is otherwise fully supported.

So far we have considered paragraph 12 as being unambiguous, but if it be considered ambiguous, the court's implied finding as to the understanding and intention of the parties, arrived at after a consideration of extrinsic evidence, is conclusive upon appeal because it is supported by reasonable inferences drawn from the evidence. (*Eastman Oil etc. Corp.* v. *Lane-Wells Co.,* (1943) 21 Cal.2d 872 [136 P.2d 564].)

Appellant does not question the sufficiency of the evidence to support the findings hereinbefore referred to, which negative the alleged refusal of the Real Estate Commissioner to continue in force a permit or to issue a new one. These findings bear directly upon the next contention, namely, that plaintiff had an obligation to keep the permit in force, had failed to do so, and thus breached its contract in a material respect. The court also found that it was not true that it was understood or agreed between the parties that plaintiff would keep in force a permit at all times while defendant was engaged in the sale of said real property to the public.

Appellant has not directed our attention to any provision of the contract which placed upon plaintiff the duty to keep in force a permit and we have found none. For this reason and also because of the facts as found upon this issue, the contention is unsound.

The next alleged breach of the contract relates to the sale of land in the grant to others than defendant. The agreement provided specifically that plaintiff would not sell any of the land to others during the life of the agreement. It is contended that plaintiff sold 255 acres in violation of its agreement. The only reference to this acreage in the findings is one to the effect that the deed which plaintiff tendered to defendant and which embraced 2,056.26 acres included ''acreage sold to customers of plaintiff other than defendant between May 23, 1938, and August 10, 1938, which sales were thereafter cancelled, 255 acres.'' The agreement provided that respondent should have the right to use acreage in the grant sufficient to reinstate contracts entered into between plaintiff and its customers prior to April 8, 1938, the date of its first contract with defendant, and which contracts had theretofore been cancelled by plaintiff. Plaintiff directs attention to an auditor's report furnished to the court and which was in evidence, from which it appears that the 255 acres in question were used by plaintiff to reinstate old contracts, that the reinstated contracts covering this acreage also were cancelled and that the 255 acres were actually deeded to defendant. Plaintiff's statement of the evidence is not challenged by defendant in his closing brief, and upon these facts defendant has no cause for complaint.

The next contention is that although the contract recited that plaintiff's holdings in the grant approximated 6,000 acres, plaintiff owned considerably less than that. It is conceded that defendant purchased and received deeds for 3,889.97 acres. Defendant computes the acreage in the grant which was owned by plaintiff and which was subject to the contract at 4,137.56 acres. In this computation defendant excludes 776.28 acres which plaintiff admittedly owned, but which were not covered by the permit of the Real Estate Commissioner which authorized the sale of the land in California. The computation also excludes 1,027.65 acres which were used by plaintiff for the reinstatement of contracts which it had issued and cancelled prior to the date of its first agreement with defendant. The fact of the matter ap-

pears to be that plaintiff owned in excess of 2,000 acres in the grant in addition to the quantity for which defendant paid and received deeds, although, as we have stated, and as will be hereafter explained, defendant by the judgment is required to pay for only 986.17 acres as the balance of the unsold land. Defendant received deeds to all of the acreage which he sought to acquire under the contract; he at no time demanded a conveyance of acreage which plaintiff was unable to furnish. While plaintiff may not have owned all of 6,000 acres, the parties were satisfied to use an estimated figure for the purposes of their contract. Defendant testified that he had been furnished a plat book and cards which described plaintiff's holdings and it would appear that he could have computed the acreage if he had been interested in doing so. However, plaintiff owned more land than defendant was willing to pay for and it does not appear that it would have been unable to convey to defendant a quantity of land equal to that covered by the contract if he had been willing to pay for it. We find no merit in this defense.

Another contention is that the judgment in any event was excessive. As we have already stated, plaintiff contended that defendant was bound to take an additional 2,056.26 acres for a price of $16,250.48. The court found that there remained to be acquired and paid for by defendant only 986.17 acres, which accounts for the judgment of $7,889.36. The construction which the court placed upon the contract in this connection and the method used in reaching the lower figure were distinctly favorable to defendant. While they are casually criticized by plaintiff, we need not pass upon them since we have no appeal by plaintiff and consequently have no need to inquire whether the judgment should have been greater. However, the construction which the court placed upon certain provisions of the agreement is important in our discussion of plaintiff's contention. The court found, inferentially, that the contract did not cover all of the land in the grant owned by plaintiff, but only those portions thereof which were covered by the permit of the Real Estate Commissioner. It is conceded to be a fact that 776.28 acres were acquired and paid for by defendant which were included in plaintiff's holdings but were not described in the permit. The court found that this acreage was selected by defendant as land which he wished to acquire but that in making such selections he did not know that the land was not embraced

within the permit. His present contention is that, having purchased and paid for 776.28 acres which he was not obliged to buy, the acreage so purchased should have been deducted from the 986.17 acres which by the judgment he is required to pay for, which would reduce his obligation to the purchase of 209.89 acres for a price of $1,679.12. There are several reasons why this contention cannot prevail. It was not alleged by defendant that he acquired the 776.28 acres by reason of a mutual mistake of the parties, nor was there a finding to that effect. It appears that defendant bought and resold lands in the vicinity other than those owned by plaintiff; it was neither alleged nor found that defendant would not have purchased the land had he known that it was not embraced within the permit. The court was not obliged to infer that defendant would not have purchased it if he had known that it was not covered by the permit, for if it be granted that he could not lawfully have sold that land in California, it was in evidence that his sales of the New Mexico land were not confined to California but were being conducted in many other states. Furthermore, since he was in possession of the records, it would appear that defendant could easily have ascertained whether the parcels of land he selected from time to time were covered by the permit, and it may be inferred from the fact that he did not do so that it was not a controlling factor with him. If he had been deceived or prejudiced in any material respect he had an opportunity to present his grievances fully to the trial court but, as we have pointed out, there is a deficiency of those material facts which would enable us to hold as a matter of law that defendant was entitled to have credited, upon his obligation to purchase, the 776.28 acres which he was not obliged to purchase. In order to modify the judgment we would have to assume that defendant would not have bought this acreage had he known that it was not embraced within the permit, and that it was the intention of the parties, as expressed in the agreement or inferable from the circumstances of the purchases, that defendant's obligation would be thereby reduced. We cannot assume such a state of facts. We cannot modify the judgment, as requested by defendant, because it does not appear as a matter of law, from a construction of the contract or from a construction of the findings, that grounds for modification exist.

In addition to the points we have discussed, defend-

ant, for the first time, argues the further point that plaintiff was at fault in failing to continuously drill an oil well on the land and to complete it within a reasonable time, as it was required to do under the contract, which alleged failure is now claimed to have constituted a breach of the agreement. The point requires no extended discussion. If plaintiff had failed to fulfill its drilling obligation defendant would have had a right to be excused from further performance. He neither exercised nor attempted to exercise that right, he did not attempt to prove any breach of plaintiff's obligation to drill the well, his counsel stated during the trial that they were not relying upon any alleged breach of the contract in that respect, and naturally the court made no finding on that subject.

We find nothing in the manner in which the case was tried or decided which calls for a reversal or modification of the judgment.

The judgment is affirmed.

Wood (Parker), J., and Bishop, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1943.