**HOTEL LONGVIEW, Inc., Appellant,**

**v.**

**H. A. PITTMAN, Appellee.**

No. 6783.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 24, 1955.

Rehearing Denied March 24, 1955.

Smead & Harbour, H. P. Smead, Henry H. Harbour, Longview, for appellant.

Jones, Brian & Jones, C. A. Brian, Marshall, R. L. Whitehead, Longview, for appellee.

DAVIS, Justice.

This is a suit by H. A. Pittman, plaintiff below, against Hotel Longview, Inc., defendant below, for damages for the breach of a contract dated February 15, 1952, the primary term beginning March 1, 1952, and ending February 28, 1954, and with a three-year extension provision. The pertinent provisions of said lease read as follows:

"The State of Texas,

County of Greg—

\* \* \* \* \* \*

"And Whereas both parties hereto believe that the hereinafter made agreement will result to their mutual advantage;

"Now therefore know all men by these presents that S. Ellison and T. A. Young, partners doing business as Hotel Longview, hereinafter called Lessor, do by these presents lease and demise unto H. A. Pittman, hereinafter called Lessee, the kitchen, cold and dry food storage rooms, the 'Coffee Shop', 'Mural Room' and banquet room known as the 'Cherokee Room', all located in and upon property of Hotel Longview in Longview, Texas, together with all of the equipment, furniture and fixtures now used by Hotel Longview in its food, restaurant and catering business as more *peculiarly* shown by an inventory attached hereto as 'Exhibit A' to this lease agreement, upon the following terms, conditions, and provisions:

"(1) This lease, unless terminated as hereinafter provided, shall be for a term of two years beginning on the 1st day of March, 1952 and ending the 28th day of February, 1954.

"Providing Lessee shall not be in default with respect with the terms and provisions of this lease at the expiration hereof, Lessee may if he desires to do so have the option of extending this lease for an additional term of three years, providing he desires

to continue under the same ownership and under the same terms and provisions as provided for herein.

"This lease is made with the express understanding that Lessee shall conduct his business and the leased premises in a legal and lawful manner and in a manner to compliment Lessor's hotel business to the satisfaction of Lessor, and Lessee undertakes this arrangement with the understanding that he shall be enabled to operate this business in a manner customarily permitted by hotels wherein the food department is leased out to an independent food contractor. If either party hereto become of the opinion that the other party is not carrying out the terms of this lease, the complaining party shall give the other notice in writing specifying in detail, the nature of the default and in what respect this lease is not being carried out, and the party in default shall have thirty (30) days in which to correct, or in which to comply with the demand.

"Should there be a failure to correct the default or comply with the matter stipulated in the notice then the complaining party may serve a second notice stating that at the expiration of sixty (60) days from the date of the second notice, this lease shall be cancelled and terminated, and upon expiration of the time there specified the lease shall terminate, cease and come to an end.

"(2) Upon termination of this lease for any reason, or at its expiration, Lessor, its servants, agents, and employees may take possession of the leased premises, furniture, fixtures, and equipment without in any manner being liable to Lessee, its heirs, and assigns for any damages sustained or caused by such entry and taking of possession, whether such damages be due to negligence of Lessor, or for any other reason, and Lessee agrees in behalf of himself, his heirs and assigns to protect, indemnify, and save Lessor harmless for any and all claims for any such damages.

"(3) Lessee agrees to pay Lessor all rentals stipulated for, herein, at the offices of Hotel Longview, in Longview, Gregg County, Texas.

"(4) As rental for the first two (2) months of this lease, Lessee agrees to pay Lessor ten per cent (10%) of the gross taken in from food and beverage sales in Hotel Longview.

\*    \*    \*    \*    \*    \*

"Witness the hands of the parties in duplicate this the 15th day of February, 1952.

Hotel Longview
By:
S. Ellison (sgd)
S. Ellison
T. A. Young (sgd)
T. A. Young, Lessor.
H. A. Pittman (sgd)
H. A. Pittman, Lessee."

The above lease was acknowledged by all parties.

Subsequent to the date of the lease and prior to the alleged breach, the interest of the Lessor, the partnership, was acquired by Hotel Longview, Inc., with T. A. (Tom) Young as president and general manager. The evidence shows that Pittman and Young just "naturally" did not get along, and as soon as Mr. Young, who also owned the controlling stock in the corporation, assumed the managership, made it known to Pittman that he, Young, wanted the "food department" (referring to the lease) back. There was a contention by Young that Pittman was not operating the food department in such manner as to compliment the Hotel's business. Young carried the lease to H. P. Smead, an attorney in Longview, and, according to the evidence, gave him instructions to give Pittman notice under it required to terminate the contract. Smead wrote Pittman the following letter:

"August 13, 1953.
"Mr. H. A. Pittman,
"c/o Hotel Longview, Inc.,
"Longview, Texas.
"Dear Sir:

"Hotel Longview, Inc. has asked that I write you with reference to the contract under date of the 15th of February, 1952, whereby you were leased The Kitchen Coffee Shop Mural Room and the Banquet Room. It is the

contention of the Hotel Longview that you have violated their contract, and they have instructed me to notify you that they are hereby declaring the contract terminated.

"Under the terms of this agreement, the hotel is obligated to buy back from you at actual inventory value all food and beverage stocks in your possession, and all china, crystal, glass, silverware and linens.

"In order that this matter may be closed, we will ask that you prepare an inventory and submit same to Mr. Young, so that he may verify same, and that you do this at your earliest possible opportunity.

> "Yours very truly,
> "Smead and Harbour
> "By (s) H. P. Smead
> "H. P. Smead."

HPS:sc

Upon receipt of the above letter, Pittman immediately carried it to his attorneys in Marshall who replied as follows:

> "August 14, 1953.

"Messrs. Smead and Harbour
"Attorneys at Law
"Longview, Texas
"Attention: Mr. Smead
"Dear Sir:

"We have been employed by Mr. H. A. Pittman of Longview in connection with the breach of his lease contract by Hotel Longview, Inc., as reflected in your letter of August 13, 1953, accressed to Mr. Pittman.

"He considers that the hotel has improperly renounced performance of this lease contract, and that by reason of its action, he has been damaged to the extent of future profits he would have made under the lease contract and through the exercise of his option for an additional three years after February 28, 1954. Mr. Pittman is ready to furnish a profit and loss statement through July 31, 1953, and beginning

January 1, 1953 as a basis for use in determining the probable value of such future profits. We would appreciate your taking this matter up with Hotel Longview, Inc. and letting us know its attitude. Since the hotel has breached the contract, Mr. Pittman would like to know its pleasure with respect to the items mentioned in the second paragraph of your letter of August 13th, which he stands ready to deliver when the damages he has been occasioned by the breach of the contract have been paid or agreed to be paid by Hotel Longview, Inc.

> "Yours very truly
> "Jones, Jones & Brian
> "Per:

"FJ/bh
"bcc: Mr. H. A. Pittman
"c/o Hotel Longview
"Longview, Texas."

This letter was brought back to Longview by Pittman and mailed. Then, Smead wrote Pittman the following letter:

> "August 15, 1953.

"Mr. H. A. Pittman
"c/o Hotel Longview, Inc.
"Longview, Texas
"Dear Sir:

"We wrote you under date of August the 13th to the effect that the Hotel Longview considered that you had violated your contract of February 15, 1952, for the operation of the dining services in connection with the Hotel.

"We did not demand possession of the premises for the reason that in your contract, you have the right to correct any default within 30 days, and should you fail to correct the default within 30 days, at the expiration of a further 60 days, that the lease would be terminated and canceled. Hotel Longview states that you are not conducting your business to its satisfaction in a manner to compliment the Hotel Longview's hotel business. If you desire to avail yourself of these options, of course, under the contract, you have

the right to do so, and the Hotel Longview makes no contention to the contrary.

> "Yours truly,
> "Smead & Harbour
> "By s/ H. P. Smead."

HPS :sc

This letter was personally delivered to Pittman on August 15, 1953.

On September 4, 1953, Pittman, Young, and others inventoried the property and on September 5, 1953, Pittman surrendered the property to Hotel Longview, Inc., without payment or agreement to pay any damages by Hotel Longview, Inc.

Suit was filed by Pittman on October 22, 1953. Prior to the writing of the first letter by Smead, Pittman had been to Corpus Christi and several other places to see about leasing another cafe or coffee shop. Pittman leased the coffee shop in the White Plaza Hotel in Corpus Christi and assumed management on September 15, 1953.

Pittman takes the position that he is entitled to actual damages for a breach of the primary term of the lease and actual damages for an anticipatory breach of the three-year optional term thereof.

Trial was to a jury which found that: (1) It was the unconditional intention of Hotel Longview, Inc., at the time of the delivery of the letter dated August 13, 1953, not to further perform the contract dated February 15, 1952; (2) that H. P. Smead had apparent authority to write the letter dated August 13, 1953; (3A) the amount of damages sustained by Pittman from August 13, 1953, to February 28, 1954, as a direct result of the breach of the contract was $1,900; and (3B) the amount of damages sustained by Pittman for a breach of the optional term of said contract from February 28, 1954, to February 28, 1957, was $10,000. The evidence shows that Pittman made a net profit in Hotel Longview of $7,756.34 from January 1, 1953, through September 4, 1953, and his miscellaneous expenses there for that same period of time were $925.19, and that he made a net profit in the White Plaza Hotel at Corpus Christi

of $3,777.81 from September 15, 1953, through February 28, 1954, and his miscellaneous expense there for that same period was $4,976.85. When this is calculated, he sustained only an actual loss from the date he left Hotel Longview through February 28, 1954, in the sum of $1,780.62.

Appellant brings forward 10 points of error. Points 1 and 2 complain of the action of the trial court in overruling its motion for an instructed verdict and motion for judgment non obstante veredicto because there was no evidence showing that appellant authorized any person to terminate the contract other than in accordance with the terms and provisions thereof.

Under the Texas authorities, an attorney is a special agent and his powers and authority are confined to those necessary to the proper fulfillment of the duties cast upon him by such employment. 5 Tex.Jur. 444, sec. 41; Bourland v. Huffhines, Tex.Civ.App. 269 S.W. 184, affirmed, Tex.Com.App., 280 S.W. 561; Commercial Credit Co. v. Crone, Tex.Civ.App., 270 S.W. 209; Magill v. Rugeley, Tex.Civ. App., 171 S.W. 528, error ref.; State Life Ins. Co. v. Duke, Tex.Civ.App., 69 S.W.2d 791, error ref.; American National Ins. Co. v. Savage, Tex.Civ.App., 112 S.W.2d 240, error dis. One dealing with a special agent does so at his peril; if the special agent exceeds his authority, then the principal, in the absence of ratification, is not bound by the acts of such special agent. Bourland v. Huffhines, supra; 2 Tex.Jur. 406, 407 and 408, secs. 22, 23 and 24; 2 Tex.Jur. 423 and 424, sec. 37. In a suit to enforce an agreement alleged to have been made by attorney for his client, it must be alleged and proved that the attorney had authority to bind his client by such agreement. Commercial Credit Co. v. Crone, supra. In 7 C.J.S., Attorney and Client, § 76, on page 888, it is said: "A party who relies on a statement which, it is alleged, was made by an attorney at law, as a basis for recovery by such party, has the burden to prove that the making of such alleged statement was within the scope of such attorney's alleged agency for another."

This rule is also stated in the case of Pagel v. Pumphrey, Tex.Civ.App., 204 S.W.2d 58, w/r, n. r. e.

While the allegations of agency in this case may be sufficient on the issue of agency, there is no allegation, or sufficient proof, to support the issue of authority of the agent to bind the principal. The only proof offered as to the authority of the agent was offered by appellee by calling the alleged agent as a witness for appellee and after proving by him that he wrote the letter dated August 13, 1953, asked him the following question: "Q. Now, Mr. Smead, had Hotel Longview asked you to write this letter?" to which Mr. Smead replied: "A. Well, I say this, Mr. Tom Young, who was President of the Hotel Longview Company, was also the Manager, so I understood, handed me Pittman's contract. He told me to give him notice under that required to terminate the contract. That was my instruction."

We think that testimony completely destroyed any presumption that the agent had any authority to give any notice, except to legally terminate the contract. Appellee contends that a subsequent question asked Smead and the answer thereto impeaches the foregoing quoted testimony. And it is entirely possible that there is a misplaced comma in the answer to the question relied upon. The question and answer are as follows: "Q. No, I did not ask you that Mr. Smead, I asked you if he did ask you to write what you put in that letter? A. He told me to write a letter containing what I said, he authorized me to, yes, sir." Now, if you remove the comma after the word "said" it would read as follows: "He told me to write a letter containing what I said he authorized me to say, yes, sir," and then the answer would conform to his previous testimony. Even though the way it is punctuated in the statement of facts may be correct, it still avails appellee nothing. He cannot impeach his own witness. That rule of law is so well settled in Texas that citation of authority is unnecessary. Points 1 and 2 are sustained.

By points 3, 4 and 5 appellant complains of the action of the trial court in submitting an issue to the jury on the question of the "apparent authority" of Smead to write the letter dated August 13, 1953, because there was no evidence of any act or omission of appellant raising such issue, the evidence was insufficient to raise the issue, and no evidence showing that appellee relied upon such authority.

Appellee did not allege apparent authority or any of the essential elements required to show apparent authority. There is no evidence of any acts of the principal to support such authority or that the appellee, in good faith, relied upon such authority and in so doing, changed his position to his detriment. Apparent authority of a special agent is based exclusively upon an estoppel resulting from some specific act or acts of the principal directed to or for the benefit of a third party, who with knowledge thereof acts in good faith in reliance thereon to his detriment. The facts creating the estoppel must normally be alleged and always be proved. 2 T.J. 428, sec. 40; Hildebrand's Texas Corporations, Vol. 2, p. 582, sec. 639; Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463; Harrison v. Life Ins. Co. of Virginia, Tex.Civ.App., 121 S.W.2d 451; Wewerka v. Lantron, Tex.Civ.App., 174 S.W.2d 630, writ ref. w/m; 2 C.J.S., Agency, § 96, pages 1214 and 1215; Hearn v. Hanlon-Buchanan, Inc., Tex.Civ.App., 179 S.W.2d 364, 365; Southwestern Bell Tel. Co. v. Coughlin, 5 Cir., 40 F.2d 349, certiorari denied, 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752; Bankers Protective Life Ins. Co. v. Addison, Tex.Civ.App., 237 S.W.2d 694. Points 3, 4 and 5 are sustained.

The matters complained of in appellant's points 6, 7, 8 and 9 are affirmative defensive matters which must be pleaded. They were not pleaded as a defense to the suit and no special issue requested on same and were therefore waived. The points are overruled.

Point 10 complains of the action of the trial court in overruling appellant's motion.

to disregard the jury's findings on special issue 3–B which inquired into damages suffered by appellee solely because of the anticipatory breach of the optional term of the contract, because there was no evidence that appellee had given appellant any notice of exercising or intending to exercise the same.

No consideration is recited in the optional extension provision of the lease. We find it to be just a naked offer which appellant had a right to withdraw at any time before its acceptance. There was no acceptance of the option, or notice of intention, to accept, prior to the notice of termination by appellant, which amounted to a withdrawal of the offer. An offer without a consideration may be withdrawn at any time before acceptance. Elliott on Contracts, sec. 232; James on Option Contracts, sec. 334; 51 C.J.S., Landlord and Tenant, § 188b, page 789; Walker Avenue Realty Co. v. Alaskan Fur Co., Tex.Civ. App., 131 S.W.2d 196, error ref.; 51 C.J.S., Landlord and Tenant, § 208b, page 812; 13 C.J. 293, 294; 17 C.J.S., Contracts, § 50; Womack v. Dalton Adding Mach. Sales Co., Tex.Civ.App., 285 S.W. 680; 12 Am. Jur., 528, sec. 32; 10 Tex.Jur. 33, sec. 15. If no time is fixed for giving notice of acceptance, the law will presume parties intended reasonable notice. Hatt v. Walker, Tex.Civ.App., 33 S.W.2d 489, error dismissed; 10 Tex.Jur. 37, sec. 18. Point 10 is sustained.

There was no objection by appellant to the description of the property contained in the lease. We will not pass on that question, but it did not escape our attention.

It seems to us that the most serious obstacle in this case and one that appellee can not overcome is the "Release" contained in section (2) of the contract. For convenience, it is re-copied below, with emphasis and quotations ours:

"(2) Upon *termination* of this lease 'for any reason', or at its expiration, *Lessor,* its servants, agents, and employees *may take possession of the leased premises, furniture, fixtures, and*

equipment '*without in any manner being liable to Lessee'*, its heirs, and assigns '*for any damages*' sustained **or** caused by such entry and taking of possession, *whether such damages be due to 'negligence'* of Lessor, '*or for any other reason'*, and Lessee agrees in behalf of himself his heirs and assigns to protect, indemnify, and save '*Lessor'* harmless for '*any and all'* claims for any such damages."

Not only is the quoted section a "release", it contains a promise to indemnify lessor from "any damages." It is a rather unique provision to be found in a contract. It left the lessee to the mercy of the lessor, and it is doubtful that he could have even been considered a tenant-at-will under the instrument. In 9 Cyc. 618, 619, 620 and 621, secs. (I), (II) and (III) it is said:

"Contracts are frequently the subject of litigation in which the promisor agrees to pay for work or goods provided he is satisfied with them. The cases of this character may conveniently be put under two heads: (1) Where the fancy, taste, sensibility, or judgment of the promisor are involved, and (2) where the question is merely one of operative fitness or mechanical utility * * *

"The personal thread which runs through agreements of this class has caused a unanimity of judicial opinion that here at least the promisee is practically debarred from questioning the ground of decision on the part of the promisor or investigating its propriety. The courts refuse to say that where a man agrees to pay if he is satisfied with a thing of this kind he can be compelled to pay on proof that someone else is satisfied with it. They recognize that in matters of fancy, taste, or judgment there is no absolute standard as to what is good or bad, and leave each man free to act on his ideas or prejudices as the case may be. * *

"The rule also applies to a contract providing that security for its performance shall be satisfactory. * * *

"There is no good reason why in cases of operative fitness or mechanical utility the same principle of law should not be applied. Although the thing to be done may not involve the feelings, taste, sensibility, or personal opinion of the promisor, yet he, in making the contract, may not have been willing to leave his freedom of choice exposed to any contention or subject to any contingency. He is resolved to permit no right in any one else to judge for him or to pass on the wisdom or unwisdom, the justice or injustice, of his action. Such is his will. He will not enter into any bargain except upon the condition of reserving the power to do what others might regard as unreasonable. And as there is assuredly no law which prevents a person from making contracts of this kind if he chooses, the courts should not hesitate to enforce them. The agreement is in short not to make or do a thing which the promisor ought to be satisfied with, and therefore ought to pay for, but to make or do a thing which he is satisfied with. Such a contract may be one-sided in being dependent upon the caprice of one of the parties; it may be an unwise contract to make; but if it is entered into voluntarily, the promisee is bound, and can have no right to ask a court to alter its terms in his favor. * * * 'Satisfactory' in such cases means satisfactory to the promisor if the contract is silent as to the person to whom the work, etc., shall be satisfactory."

See authorities cited under all sections. See also Norins Realty Co. v. Hoytt, 61 Cal.App.2d 194, 142 P.2d 353; Artukovich v. Pacific States Cast Iron Pipe Co., 78 Cal.App.2d 1, 176 P.2d 962. Under the lease, whether or not Pittman was operating the coffee shop in such manner as to compliment the Hotel's business, was a matter of opinion for the lessor.

Appellee pleaded and proved the contract in its entirety, including the release from "any liability" for "any reason." And the release contained therein, which he vol-untarily signed, completely overcomes any contention to the contrary.

For the errors hereinabove pointed out and our construction of the contract as a whole, the judgment of the trial court is reversed and judgment is here rendered that appellee take nothing, and it is so ordered.