[*Civ. No. 22609. Second Dist., Div. Two. Mar. 12, 1958.*]

GEORGE E. TIBBETS et al., Respondents, v. DAWSON E. ROBB et al., Appellants.

332

Charles W. Engelbertson for Appellants.

Durley, Todd & Cearnal, W. Mark Durley and Dale Cearnal for Respondents.

ASHBURN, Acting P. J.—Defendants appeal from a judgment terminating their rights under a contract for purchase from plaintiffs of certain real property. The complaint and the judgment are in the form of quiet title. The major question on appeal is whether defendants were required to make an installment payment on June 1, 1956, and whether they were in default in failing to perform. This question involves numerous subsidiary ones which turn largely upon the resolution of an ambiguity in the contract and the manner of its disposition in the findings and judgment.

On February 17, 1956, the Tibbets, designated as "sellers,"

agreed to sell, and the Robbs, as "buyers," agreed to purchase, certain real property in the city of Oxnard. The written agreement provided that sellers should erect at their own cost a certain building upon the land according to plans and specifications therein approved by all parties; that erection of same should begin within ten days and be completed within a reasonable time. The sale price of the land and improvement to be erected thereon was stated to be "a sum equal to Eleven Thousand Two Hundred Fifty Dollars ($11,250.00) plus the actual cost of the building to be erected thereon. . . . When the total cost of the building has been ascertained an amendment to this lease shall be executed, setting out the full cost of such building." As a down payment buyers were to assign to sellers a certain contract of January 13, 1955, executed by Joe and Alma Faye Buckingham in favor of F. M. Engelbergstron, upon which the unpaid balance then was $1,984.29. This assignment was duly executed. The balance of the purchase price was payable in installments at the rate of one per cent of the full purchase price per month. The governing paragraph reads: "The said buyers do hereby agree to pay the purchase price of and for said real property together with the improvements to be erected thereon at the rate of one percent (1%) per month or more on the entire cost of the lot and building (the lot, as heretofore stated, to be priced at $11,250.00), the first of which payments shall be made on the 1st day of June, 1956 and a like amount on the first day of each month thereafter until all of the purchase price and interest thereon have been fully paid. The payments so to be made shall include interest at the rate of six percent (6%) per annum, payable monthly, and said Buyers, and each of them, do hereby agree to pay interest on the said purchase price and the decreasing amounts thereof at the rate of six percent (6%) per annum, payable monthly and in the manner hereinbefore set forth." The event of default by buyers is dealt with as follows: "In the event of the failure on the part of the Buyers to comply with any of the terms or conditions hereof by said Buyers and said default shall be in existence for the period of thirty (30) days or more, the Sellers shall be released from all obligations in law or equity to convey said real property or to perform any other obligation imposed upon them by this agreement, and the Buyers shall forfeit all right thereto and to the property hereby agreed to be sold, and all right, title and interest in and to any monies paid under the terms hereof, such money to be considered in such case

as compensation for the use of said property." Also: "[A]nd provided also that the rights of the owner in and to any of the real property herein described, arising by reason of a reversion of the title to said lot or land occuring under a breach of these conditions and restrictions, shall not be exercised until, and no action shall be brought to enforce and/or establish such reversion unless, a notice of such breach, setting forth the facts of the breach, has been given to the owner of said land, and such breach has not been remedied within thirty (30) days after the giving of said notice." Buyers were to have possession upon completion of the building and "during such times as they may not be in default as to any of the terms or provisions of this agreement."

The building was not completed by June 1, 1956, the date specified for payment of the first installment of purchase price, and no payment was made. Thereupon, on June 7, 1956, sellers gave buyers a written notice of nonpayment of the installment of June 1, adding: "The cost of the building has not yet been established, and, therefore, at this time, demand is made on you for the payment due June 1, 1956, based on the price of the lot reduced by the unpaid amount of the contract which was assigned to us pursuant to said Agreement, plus interest as provided for in the Agreement. We reserve the right to change, from time to time, the basis of the amount due from you monthly to include the cost of the building." But the buyers made no payment whatever. On September 25, 1956, the sellers sued to quiet title, for restoration of possession, etc.

All parties recognized that, when applied to the following facts, the contract was ambiguous with respect to the time for beginning payments, i.e., the building was to be completed within a reasonable time, the first payment to be made on June 1, 1956, and to consist of one per cent of the lot value ($11,250) plus the actual cost of the building; the building was under construction until July 25, 1956, and the full cost not ascertained or ascertainable on or before June 1, 1956. Plaintiffs alleged the intent of the parties as follows: "It was the true intent and meaning of the terms of said Agreement, and by its terms the said defendants agreed and undertook, that, regardless of whether or not said improvements to be constructed on said lot were finished on June 1, 1956, defendants were to pay on the first day of each month commencing June 1, 1956, an amount of money equal to one percent of the

amount of $11,250.00 (the cost of the lot) plus the cost of the building, whether completed or uncompleted, as of the time of payment reduced by the unpaid amount of a contract dated January 13, 1955 executed by Joe and Alma Fay Buckingham, and in favor of F. M. Engelbergstron ($1,984.29).'' Defendants' answer: ''Further answering, defendants allege it was the true intent and meaning of the terms of said agreement, and by its terms said defendants agreed and undertook that the said payments were to commence only when said improvements were completed. It was the true intent and meaning of the terms of said agreement that defendants were to commence said payments only when said improvements were completed, whether on June 1, 1956, or after June 1, 1956.'' Oral and documentary evidence was taken at the trial and judgment rendered in favor of plaintiffs. The court found: ''2. Under and pursuant to the terms of said Agreement defendants were obligated to make a payment on or before June 1, 1956, and said payment was not made. . . . 6. A notice of default setting forth the nonpayment of moneys due on or before June 1, 1956 was given as required by said Agreement from plaintiffs to defendants and this action was not commenced until thirty days after the giving of said notice. 7. Defendants' default, as set forth above, continued for a period of thirty days. 8. Plaintiffs performed all of their obligations under said Agreement until they were excused from performance after defendants' default had been in existence for a period of thirty days. . . . 13. The work of constructing the building done by plaintiffs pursuant to the Agreement proceeded with reasonable diligence except during times that delays were caused by the wrongful interference of defendants.''

██ Appellants undertake to argue the sufficiency of the evidence to support the findings, particularly those which are to the effect that the failure to complete the building was due to their unjustified interference with the work and that their payment was due on June 1 regardless of noncompletion of the structure. These arguments cannot be entertained for this appeal must be treated as one upon the judgment roll.

██ Respondents moved to dismiss the appeal and appellants made a countermotion to be relieved from default wherein they requested ''that they may be permitted to appeal only on the clerk's transcript under Rule 5 (f).'' The motion to dismiss was denied on September 12, 1957, ''with leave to appellants to proceed upon the judgment roll alone and upon

condition that they do so.'' Nevertheless, appellants filed on September 26, 1957, a partial reporter's transcript and caused to be included in the clerk's transcript, filed on the same day, two exhibits which apparently had been received in evidence. This court's order of September 12th precluded either of these maneuvers and they must be disregarded for that reason.

Moreover, rule 4(b) of the Rules on Appeal permits the use of a partial reporter's transcript only by stipulation or when ''appellant, in his notice to the clerk, states the points to be raised by him on the appeal.'' Neither of these conditions precedent was fulfilled here.

▋ The inclusion of exhibits in a clerk's transcript (rules 4(d) and 5(b)) is appropriate only as a supplement to a reporter's transcript. That procedure does not apply to an appeal on the judgment roll and cannot enlarge the scope of the same. The presumption that the record includes all matters material to a determination of the points on appeal does not apply to a judgment roll appeal unless the error claimed by appellant appears on the face of·the record (rule 52). The sufficiency of the evidence cannot be reviewed.

▋ ''In this type of appeal, since 'the evidence is not before this court, we are confined to a determination of the questions as to whether the complaint states a cause of action; whether the findings are within the issues; whether the judgment is supported by the findings and whether reversible error appears upon the face of the record.' '' (*Hunt* v. *Plavsa,* 103 Cal. App.2d 222, 224 [229 P.2d 482].) Appellants declare in their opening brief that '' [t]his appeal is based solely on the clerk's transcript and appellants' Exhibit 'A' and 'F.' '' But the designated exhibits cannot aid their cause. ▋ ''Appellants cannot, by designating for inclusion in the clerk's transcript documents not properly a part of the judgment roll, or by requesting that the exhibits received in evidence be transmitted to the appellate court, enlarge the scope of the appellate court's review.'' (*Hunt* v. *Plavsa, supra,* p. 224.) The situation thus presented is clearly explained by Mr. Justice Nourse, pro tem., in *White* v. *Jones,* 136 Cal.App.2d 567, 569-571 [288 P.2d 913]. It is there said, in part: ''The record on appeal here consists only of the clerk's transcript which contains the judgment roll and certain documents received in evidence in the court below.

''In disposing of appellant's contention this appeal is therefore to be treated as one on the judgment roll. ▋ On such

an appeal the question of sufficiency of the evidence to support the findings is not open. [Citation.]

■ ''The judgment here can only be attacked for errors which affirmatively appear upon the face of the judgment roll. Appellant cannot broaden the scope of this court's inquiry by incorporating in the clerk's transcript the documentary evidence received in the court below. [Citations.]

''On an appeal based on a record such as that here, we must presume that in the oral proceedings there was substantial evidence to support the findings. In that inquiry we cannot look beyond the 'facts appearing in the findings' and here it is admitted that those facts support the judgment. [Citations.]

■ ''Rules 4(b), 6, 7 and 52 of the Rules on Appeal were designed to make appeals less burdensome and expensive. They were not, however, designed to nor do they broaden the questions that may be raised on a record such as the one here. . . . [P. 569.]

''In order that an appellant might safely prosecute an appeal upon one of the limited records provided for by the rules we have mentioned, rule 52 was adopted and then read as follows: 'If a record on appeal does not contain all of the papers, records and oral proceedings, but is certified by the judge or the clerk, or stipulated to by the parties, in accordance with these rules, it shall be presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal.' [P. 570.] . . .

''Effective January 1, 1951, rule 52 was amended by adding thereto the following sentence: 'On an appeal on the judgment roll alone, or on a partial or complete clerk's transcript, the *foregoing presumption* shall not apply unless the error claimed by appellant appears on the face of the record.' ■ Under the rule as amended the presumptions in support of the judgment that were made prior to the adoption of the Rules on Appeal apply except as expressly limited by rule 52, and it is not presumed, in the absence of the oral proceedings being made a part of the record on appeal pursuant to one of the methods provided for by the rules, that the record on appeal contains all matter material to the determination of the appeal. Therefore we must presume that the trial court received evidence which would support its findings.'' (P. 571.)

So we look to the judgment roll to determine whether reversible error appears in this cause. That includes, of course,

the pleadings and their exhibits (the contract and notice of default), the findings and judgment. The basic question of whether defendants defaulted upon their obligations thus emerges. The parties having alleged their respective theories of the intent of the ambiguous language of the contract concerning installment payments, it became the duty of the trial judge to pass upon that issue and declare the result. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 525 [297 P.2d 428] ; 12 Cal.Jur.2d § 119, p. 324.) Oral and documentary evidence was received below and it is to be presumed that it went to this issue as well as others. The pertinent findings are 2 and 13 quoted above. In effect they declare that plaintiffs proceeded with diligence in constructing the building but were prevented from completing it before June 1, 1956 by wrongful interference of defendants, and therefore defendants' first payment became due on June 1 regardless of prior completion of the building. We must assume that competent oral and documentary evidence was received which warranted these factual findings concerning plaintiffs' diligence and defendants' interference. The conclusion that the first payment accrued on June 1, 1956, flows from the application of settled legal principles to those facts.

 So far as an appellate tribunal is concerned the governing principle is stated in *Transportation Guar. Co.* v. *Jellins*, 29 Cal.2d 242, 245 [174 P.2d 625] : "Contrary to the rule contended for by defendant we must, on this appeal, in determining whether the judgment shall be reversed or affirmed, construe all ambiguities in the contracts against defendant and in favor of plaintiff. This is true, if for no other reason, than that on a judgment roll appeal it will be presumed that all evidence necessary to support the findings was received. (*Freeman* v. *Gray-Cowan, Inc.* (1933), 219 Cal. 85, 88 [25 P.2d 415].) In accordance with such rule it is to be presumed that evidence was received establishing that the contracts in question, at least insofar as any ambiguous language is concerned, were prepared and formulated by defendant and hence are to be construed against him."

 In the trial court the following considerations were pertinent. Sections 1511 and 1512, Civil Code, declare the fundamental principle that prevention of performance is the equivalent of actual performance by the party so interfered with. The decisions reach the same result. " 'Performance by the party not in fault is always excused by the wrongful

refusal to perform by the other party. The rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party.' (*Central Oil Co.* v. *Southern Refining Co.*, 154 Cal. 165, 167 [97 P. 177].)'' (*Vineland Homes, Inc.* v. *Barish*, 138 Cal.App.2d 747, 759 [292 P.2d 941].) See also, to the same effect, *Norins Realty Co., Inc.* v. *Hoytt*, 61 Cal.App.2d 194, 199-200 [142 P.2d 353]. Applied to the situation at bar this means that when defendants' interference prevented the completion of the building in time for its entire cost to be ascertained before June 1, plaintiffs stood in the same legal position as if the building were completed before that date. Hence the full payment was then due. But the realities of the situation could not be ignored. It was then impossible to determine the full cost of the structure and the vendors, through no fault of their own, were placed in the position where they could not insist upon the full loaf—one element of the computation of the payment due was unknown and at that time unknowable. So they did the next best thing and waived that portion of the installment due them and demanded one per cent of the agreed value of the lot, $11,250, less the unpaid portion of the assigned Buckingham-Engelbergstron contract, plus interest as specified in the agreement. The right which they waived belonged to them and not to the buyers for it was created for the benefit of the sellers.

The court found the notice of default to be a proper one and the default to be complete when 30 days had elapsed after service of same. All of these things are implicit in the findings as made. They state the ultimate facts; it is not necessary to include evidentiary matters in findings. (2 Witkin, California Procedure, p. 1843, § 112; 24 Cal.Jur. § 203, p. 968.) Any subsidiary findings necessary to support the ultimate facts are implied pursuant to the recognized rule that findings must be so construed as to support the judgment if possible. ▮ ''It is well established that findings will be liberally construed in order to make them complete and internally consistent, thus avoiding reversal on purely technical grounds. . . . ▮ 'It is also to be noted that while full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made.' '' (*Daniels* v. *Daniels*, 143 Cal.App.2d 430, 439, 440

[300 P.2d 335].) Accord: *Sears, Roebuck & Co.* v. *Blade,* 139 Cal.App.2d 580, 592 [294 P.2d 140]; *Haigler* v. *Donnelly,* 18 Cal.2d 674, 677-678 [117 P.2d 331]; *Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593].· ▇ We conclude that the findings are sufficient to dispose of the issue embracing the fact of default and its consequences.

▇ Counsel debate the question whether this is an action to quiet title or one to foreclose a conditional sale contract. The distinction is without significance here. Actually this suit encompasses both types of relief,—termination of buyers' rights and quieting of title on account of their default. However, the attempted distinction suggests a question of applicability of the line of cases stemming from *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367], which deal with the adjustment of the equities of vendor and vendee in the event of termination of an installment contract for default of the vendee. The Barkis case says, at page 120: "Similarly, although a quiet title action is equitable in nature [citations], and equity cannot 'enforce a penalty or forfeiture in any case' [citations], it is generally held in the absence of a showing that the vendor will realize more than the benefit of his bargain that he may quiet his title to the property without refunding any part of the price paid." *Baffa* v. *Johnson,* 35 Cal.2d 36, 39 [216 P.2d 13], says: "Under these sections a defaulting vendee seeking restitution of part of his payments will be denied relief if his breach is wilful. On the other hand, if he is able to prove that the vendor has received more than the benefit of his bargain, the court is precluded by section 3369 from quieting the vendor's title unless he refunds the excess." The burden of so showing rests on the vendee, as indicated in the foregoing quotation from Baffa and as held in *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 332 [263 P.2d 655], and *Furst* v. *Scharer,* 119 Cal.App.2d 605, 612 [260 P.2d 198]. It appears at bar that the vendees never made any cash payments; they did assign the Buckingham-Engelbergstron agreement and, according to the findings, "certain moneys have been paid to plaintiffs" thereon, but the amount does not appear. The judgment provides: "[T]hat all sums received by plaintiffs, as assignees, under and pursuant to a certain contract dated January 13, 1955 in the principal sum of $1,984.29 executed by JOE AND ALMA FAYE BUCKINGHAM in favor of F. M. ENGELBERGSTRON from and after date hereof, be applied in payment of amounts which plaintiffs are entitled to recover from

defendants pursuant to this Decree; and, when plaintiffs have received all amounts which they are entitled to recover from defendants pursuant to this Decree, plaintiffs assign to DAWSON E. ROBB and FLORA M. ROBB (also known as F. M. ENGELBERGSTRON) all of their right, title, and interest in and to said Agreement. . . .'' Defendants-appellants did not raise this issue, did not assume the burden of showing that the instant judgment would result in unjust enrichment to the vendors, and the Barkis line of cases is not applicable here.

Appellants complain of the fact that the judgment, which quiets title in plaintiffs and declares them entitled to possession, also awards plaintiffs an attorney fee of $1,000. This was done pursuant to the terms of the agreement: ''In the event that said Buyers shall make any default hereunder and said Sellers shall take any proceedings to collect any payments herein agreed to be made by said Buyers, or to obtain possession of said property, or shall commence any action to quiet title to said property, said Buyers agree to pay the cost of any such proceeding, including an attorney's fee to be set by the Court, if Sellers prevail in such action.'' Manifestly, this action falls within the scope of the agreement. (*Cf. Johnson* v. *Kaeser*, 196 Cal. 686, 695 [239 P. 324].) The argument proceeds upon the predicate that ''[i]t is not claimed that this is an action to obtain possession or title,'' which lacks factual support. The complaint is designated as one to quiet title and prays for such relief. Respondents' brief declares on page one that the action is one to quiet title, for restitution of the real property, etc. But it is immaterial what the parties assert in this connection for the record shows that the action is one described in the quoted paragraph of the contract. That being true, the form of the action becomes inconsequential.

Other arguments have been considered but do not require discussion.

Judgment affirmed.

Herndon, J., and Kincaid, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.