Filed 3/30/15  Financial Assistance, Inc. v. Ajib CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FINANCIAL ASSISTANCE, INC.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WAJIH AJIB,<br><br>Defendant and Appellant. | F068715<br><br>(Super. Ct. No. 10CECG03997)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  M. Bruce Smith, Judge.

Wajih Ajib, in propria persona, for Defendant and Appellant.

Raymond A. Patenaude, Stephanie Boone and Jeffrey W. Speights for Plaintiff and Respondent.

-ooOoo-

Defendant Wajih Ajib (Ajib) appeals in propria persona from a judgment of $49,927.40, entered in favor of Plaintiff Financial Assistance, Inc. (Financial Assistance) following a half-day court trial on Financial Assistance's claims for breach of contract, breach of guaranty and account stated.  Ajib contends the trial court erred in ruling in Financial Assistance's favor because there is no enforceable contract as (1) essential

terms are missing, (2) the contract is illegible, (3) the trial court erroneously relied on a blank specimen to supply the terms contained in the illegible contract, and (4) he did not sign the personal guarantee. He also contends he should have been allowed to raise violations of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.) as an affirmative defense.

In preparing the record on appeal, Ajib elected to proceed without a reporter's transcript and designated only a partial clerk's transcript. As Ajib's showing on appeal is insufficient, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We take our recitation from the trial court's written decision.

In June 2010, Ajib filed a small claims action alleging a violation of the FDCPA, in which he claimed to be due $1,000 for Financial Assistance's actions in trying to collect the debt alleged against him in this action. On November 15, 2010, Financial Assistance filed its complaint against Nshan Enterprise, Inc. and Ajib, alleging causes of action for breach of the written agreement, breach of guaranty and account stated. In March 2011, Financial Assistance filed a first amended complaint that contained the same or similar allegations and Ajib filed his answer. On September 10, 2013, Ajib dismissed his small claims action without prejudice. Trial commenced on Financial Assistance's action on September 23, 2013.

According to the trial court, the evidence produced at trial showed the following:

Around March 28, 2007, a Business Direct Application either was prepared online, or retrieved online and delivered to a representative of Wells Fargo Bank (Wells Fargo). The application was made in the name of Nshan Enterprise, Inc., with a business location of 1385 Shaw Ave. #104 in Carlsbad and owner, Wajih Ajib, who resided at 760 W. Sierra in Clovis, California.

At trial, Ajib could neither confirm nor deny that he was the individual who prepared and delivered the application to Wells Fargo, but he admitted he had been

2.

looking at obtaining a line of credit at the time, which he may or may not have done through Wells Fargo. On the application, he is identified as the 100% owner of the business. Other than the Carlsbad reference and name misspelling on page four of the application, Ajib confirmed the rest of the information was correct.

A blank specimen copy of the Wells Fargo Business Banking Loan Application was received into evidence, which was identical to the completed application that was to a large extent, illegible. Based on the testimony of John Williams, which the trial court found credible, the trial court was satisfied the "Agreement and Personal Guarantee language" contained on the specimen copy was the same as the illegible portion of the completed application.

Williams testified as to Wells Fargo's custom and practice in lending on lines of credit, and as the company's custodian of records. According to Williams, no line of credit or loan would be made to any business entity without a "personal guarantee" from someone so there would be a means for collection in the event of a default. It was clear to Williams that an initial loan application was submitted and rejected twice before subsequently being overridden and a $50,000 line of credit authorized, which suggested there was some personal contact between the bank and an individual identifying himself as Wajih Ajib.

Between April 3 and April 27, 2007, the account was funded in the amount of $50,000. According to Williams, once funded and drawn on, there was a mutual agreement reached between Wells Fargo and their customer as to how the money would be paid back and under what specific terms. By July 30, 2007, the line of credit had been drawn down to zero, and by May 1, 2008, there was a principal owed of $49,482.40 and interest of $2,780.26.

The trial court found the evidence clear that someone purporting to be Wajih Ajib solicited Wells Fargo for a line of credit, and signed an "Agreement and Personal Guarantee." Under the personal guarantee, the signor jointly and severally

3.

unconditionally guaranteed and promised to pay the Bank for all indebtedness of the applicant in his individual capacity, and agreed to be bound by the terms of the customer agreement and other written documentation "that will be sent" to the applicant.

The trial court rejected Ajib's contentions that the documents showed only an application for a loan or line of credit, and therefore did not comprise a contract, because the personal guarantee constitutes an agreement with further terms to be spelled out once the applicant draws money from the line of credit. While the font was extremely small and difficult to read without significant magnification, the trial court was convinced as to its content. The trial court further found, by a preponderance of the evidence, that Ajib was the person who signed the personal guarantee and was provided the money.

The trial court explained Financial Assistance's claims: (1) that Wells Fargo entered into a contract to provide a line of credit to Nshan Enterprise and/or Ajib, which contract Nshan Enterprise and/or Ajib breached by drawing $49,482.40 from the line of credit and not repaying the indebtedness to Wells Fargo; (2) Ajib guaranteed the debt and had not reimbursed Wells Fargo for it; and (3) Financial Assistance is entitled to money due on the account of Nshan Enterprise and Ajib. The trial court found in Financial Assistance's favor on all three claims in the amount of $49,482.40 on the principal owing and awarded pre- and post-judgment interest at the legal rate from May 30, 2008. Because neither the interest rate on the line of credit nor the agreement entitling Wells Fargo thereto, was offered into evidence, the trial court found such interest not collectible.

## DISCUSSION

Ajib argues the personal guarantee is unenforceable because it lacks essential terms, such as the terms of repayment, and is illegible. He further argues there was no evidence he signed the personal guarantee, and the trial court abused its discretion in determining the illegible guarantee was identical to the legible blank sample. Finally, he

4.

contends the trial court erred in denying him the right to raise the FDCPA as an affirmative defense, set-off or cross-complaint.

The fatal problem with this appeal is that Ajib fails to provide us with a reporter's transcript of the court trial or any other adequate statement of the evidence. The record consists of a partial clerk's transcript which includes the following documents: (1) Ajib's trial brief; (2) Ajib's motion in limine to preclude Financial Assistance from offering any evidence related to illegible documents; (3) Financial Assistance's motions in limine to preclude Ajib from offering any evidence regarding FDCPA violations, proceeding by jury trial, or settlement negotiations; (4) Financial Assistance's trial brief; (5) the minutes of the trial; (6) Financial Assistance's trial exhibits one through four; (7) the trial court's written decision; and (8) the judgment. After the clerk's transcript was filed, we granted Ajib's request to augment the record with Ajib's "trial exhibits" one through five, which according to the minutes were not entered into evidence, and Ajib's answer to the first amended complaint.

Without the reporter's transcript, we have no record of the trial court's rulings on the motions in limine or of the trial testimony. Accordingly, there is no evidence before us from which we can analyze Ajib's claims of error. While we have the trial exhibits, it has long been settled that, when no reporter's transcript is provided, the appellate court may not consider exhibits filed as part of a clerk's transcript and the exhibits cannot be used to establish error; the appeal is treated as a judgment roll appeal. (See, e.g. *Williams v. Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479, 481.)

On a judgment roll appeal, "'[t]he question of the sufficiency of the evidence to support the findings is not open.'" (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) Instead, we presume the trial court's findings are supported by substantial evidence, and we can only consider whether the judgment is supported by the findings or whether reversible error appears on the face of the record. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325 [where an appellant fails to provide a reporter's transcript of a

trial preceding a judgment, we presume that the evidence is sufficient to sustain the trial court's findings and our review is limited to determining whether any error appears on the face of the record]; *Fitch v. Pacific. Fid. Life Ins. Co.* (1975) 54 Cal.App.3d 140, 142, fn. 1 ["This appeal is based upon only the clerk's transcript and, as such, is considered to be upon the judgment roll alone. [Citation.] Hence the trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding upon us, unless the judgment is not supported by the findings or reversible error appears on the face of the record."]; *Ruzich v. Boro* (1943) 58 Cal.App.2d 541, 543; see also California Rule of Court, rule 8.163 ["The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record."].) On a judgment roll appeal, we presume that the judgment is correct and is supported by the evidence. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 353, pp. 401-402.)

Notwithstanding these well-established standards, Ajib seeks to establish reversal is justified based on exhibits admitted at trial. Pursuant to the applicable standard of review, however, we are unable to rely on the exhibits in any manner. (See *Tibbets v. Robb* (1958) 158 Cal.App.2d 330, 336-337 (*Tibbets*).) Accordingly, as to each of Ajib's arguments on appeal, the initial question is whether the claimed error appears on the face of the record. (*Tibbets, supra,* 158 Cal.App.2d at p. 337.)

We acknowledge that Ajib is representing himself on appeal. While under the law one may act as his own attorney, when a litigant does so, he is held to the same restrictive rules of procedure and evidence as an attorney. (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639; *Monastero v. Los Angeles Transit Co.* (1955) 131 Cal.App.2d 156, 160-161.) Nevertheless, we conclude that as to all of Ajib's appellate arguments, no error appears on the face of the record and the proceedings in the trial court are presumed to support the trial court's ruling.

## **DISPOSITION**

The judgment is affirmed.  Respondent is awarded its costs on appeal.


_____

Gomes, J.

WE CONCUR


_____

Hill, P.J.


_____

Franson, J.